**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JUVENILE MALE,
*Defendant-Appellant.*

No. 09-30330

D.C. No.
4:09-cr-00064-
SEH-1
District of Montana

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JUVENILE MALE,
*Defendant-Appellant.*

No. 09-30273

D.C. No.
1:09-cr-00034-
RFC-1
District of Montana

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Chief District Judge, Presiding

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JUVENILE MALE,
*Defendant-Appellant.*

No. 09-30365

D.C. No.
4:09-cr-00071-
SEH-1
District of Montana

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

689

Argued and Submitted
September 21, 2011—San Francisco, California

Filed January 25, 2012

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Wardlaw

## COUNSEL

Anthony R. Gallagher, Federal Defender, Mark Werner, Deputy Federal Defender, Michael Donahoe and Robert Henry Branom, Jr., Assistant Federal Public Defenders, The Federal Defenders of Montana, for defendants-appellants Juvenile Males.

Michael W. Cotter, United States Attorney, Leif M. Johnson and Marcia Kay Hurd, Assistant United States Attorneys, for plaintiff-appellee United States of America.

## OPINION

WARDLAW, Circuit Judge:

Three juvenile defendants, each of whom is a member of an Indian Tribe and who pleaded true to a charge of aggravated sexual abuse with children, appeal their conditions of probation or supervision requiring registration under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq*. Defendants argue that SORNA's registration requirement contravenes the confidentiality provisions of the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. § 5031 *et seq*., and also challenge its constitutionality. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Because we conclude that Congress, in enacting SORNA, intentionally carved out a class of juveniles from the FJDA's confidentiality provisions, and that SORNA's regis-

tration requirement is constitutionally sound, we affirm the district courts' imposition of the sex offender registration conditions.

## I.   Background

These consolidated appeals — *United States v. Juvenile Male (I.M.T.D.)*, *United States v. Juvenile Male (L.S.)*, and *United States v. Juvenile Male (M.M.R.)* — involve juvenile proceedings against three Native Americans who pleaded true to committing aggravated sexual abuse with children. As a condition of probation or supervision, each was required to register as a sex offender pursuant to SORNA.

### A.   Juvenile Defendants

#### 1.   I.M.T.D.

I.M.T.D., an enrolled member of the Fort Peck Tribes, was charged with committing an act of juvenile delinquency pursuant to 18 U.S.C. § 5031 *et seq.* for offenses committed in July 2008. I.M.T.D. was born on June 21, 1991 and thus was seventeen years old at the time of the offense and is twenty years old at present. If I.M.T.D. had been an adult at the time of the offense, the charge against him would have constituted aggravated sexual abuse with children in violation of 18 U.S.C. §§ 1153(a) and 2241(c).

On August 5, 2009, I.M.T.D. pleaded true to the information without entering into a plea agreement. On August 25, 2009, the district court entered a disposition sentencing I.M.T.D. to a three-year term of probation, subject to several conditions. As special conditions, the district court ordered I.M.T.D. to "comply with the requirements of the Sex Offender Registration and Notification Act;" "comply with Sexual Offender Registration requirements for convicted offenders in any state in which [I.M.T.D.] resides;" and "register in person as a sex offender with local/tribal/county law

enforcement in the jurisdiction in which [I.M.T.D.] resides, is employed, and is a student."

### 2. L.L.S.

L.L.S., an enrolled member of the Northern Cheyenne Tribe, was charged with committing an act of juvenile delinquency pursuant to 18 U.S.C. § 5031 *et seq.* for offenses committed in approximately January or February 2005 and September 2007. L.L.S. was born on January 19, 1991 and thus was between thirteen and sixteen years old at the time of the offenses and is twenty years old at present. Like I.M.T.D., if L.L.S. had been an adult at the time of the offenses, the charge against him would have constituted aggravated sexual abuse with children in violation of 18 U.S.C. §§ 1153(a) and 2241(c).

On April 30, 2009, L.L.S. pleaded true to the information pursuant to a plea agreement. The plea agreement states that "by pleading true pursuant to this agreement [L.L.S.] is waiving all the rights set forth in . . . paragraph [nine]," however, paragraph nine does not mention sex offender registration or any condition of supervision. Separately, the plea agreement states that L.L.S. "has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current."

At the June 19, 2009 sentencing hearing, L.L.S.'s counsel noted that the question of "whether or not a juvenile should be required to register underneath . . . SORNA" was unresolved and pending before the Ninth Circuit. The district judge stated that "the issue that's before [the Ninth Circuit] is whether you can require a juvenile to register under SORNA at all . . . . And that issue, as far as I'm concerned, is preserved by you."

On June 22, 2009, the district court sentenced L.L.S. to official detention for three years, recommending that L.L.S.

be placed in a therapeutic environment for youthful offenders, and ordered two years of juvenile delinquent supervision following his release from detention, subject to a number of special conditions. As special conditions, the district court ordered L.L.S. to "comply with the requirements of the Sex Offender Registration and Notification Act" and "register in person as a sex offender with local/tribal/county law enforcement in the jurisdiction in which [L.L.S.] resides, is employed, and is a student."

### 3.  M.M.R.

M.M.R., a member of an Indian Tribe, was charged with committing acts of juvenile delinquency pursuant to 18 U.S.C. § 5031 *et seq.* for offenses committed on November 13, 2008 on the Rocky Boy's Indian Reservation. M.M.R. was born on September 17, 1994 and thus was fourteen years old at the time of the offense and is seventeen years old at present. As with I.M.T.D. and L.L.S., if M.M.R. had been an adult at the time of the offenses, the charge against him would have constituted aggravated sexual abuse with children in violation of 18 U.S.C. §§ 1153(a) and 2241(c).

On August 27, 2009, M.M.R. pleaded true to the information without entering into a plea agreement. At the September 18, 2009 sentencing hearing, M.M.R.'s counsel objected to the imposition of SORNA's registration requirements on M.M.R. The district court agreed to withhold entry of a final order pending its review of supplemental briefing on the SORNA issue. Both the government and M.M.R. filed supplementary memoranda in which M.M.R. argued "that he should not have to register under SORNA's sex offender registration requirements because M.M.R. is a juvenile and his registration would be anathema to the fundamental purpose of the FJDA."

On September 28, 2009, the district court entered a disposition sentencing M.M.R. to two years of official detention, rec-

ommending that M.M.R. be placed in a therapeutic environment for youthful offenders. The district court ordered M.M.R. to enter juvenile delinquent supervision following his release from detention until September 17, 2012, his eighteenth birthday, subject to a number of special conditions. As special conditions, the district court ordered M.M.R. to "comply with Sexual Offender Registration requirements for convicted offenders in any state in which [M.M.R.] resides" and "register in person as a sex offender with local/tribal/county law enforcement in the jurisdiction in which [M.M.R.] resides, is employed, and is a student."

B.   The Federal Juvenile Delinquency Act ("FJDA")

The FJDA, 18 U.S.C. § 5031 *et seq.*, "governs the detention and disposition of juveniles charged with delinquency." *United States v. Three Juveniles*, 61 F.3d 86, 87 (1st Cir. 1995). First enacted in 1938, the FJDA was intended " 'to provide for the care and treatment of juvenile delinquents,' " *id.* at 88 (quoting H.R. Rep. No. 75-2617, at 1 (1938)), in recognition of significant differences between juvenile delinquents and adult offenders. As Congress later noted in a committee report on proposed amendments to the FJDA, "[o]ur objective must be . . . to minimize the youngster's penetration into all negative labeling, institutional processes . . . . [a]t each critical step, we should exhaust the less rejecting, the less stigmatizing recourses before taking the next expulsive step." S. Rep. No. 93-1011, at 24 (1974) (internal quotation marks omitted).

We have concluded that " 'the purpose of the FJDA is to enhance the juvenile system by removing juveniles from the ordinary criminal justice system and by providing a separate system of "treatment" for them.' " *United States v. Juvenile*, 347 F.3d 778, 785 (9th Cir. 2003) (quoting *United States v. Frasquillo-Zomosa*, 626 F.2d 99, 101 (9th Cir. 1980)). These safeguards are necessary "in order to avoid the stigma of a prior criminal conviction and to encourage treatment and

rehabilitation." *United States v. Doe*, 94 F.3d 532, 536 (9th Cir. 1996) (internal quotation marks omitted). Thus a " 'successful prosecution under the Act results in a civil adjudication of status, not a criminal conviction.' " *Juvenile*, 347 F.3d at 785 (quoting *United States v. Doe*, 53 F.3d 1081, 1083 (9th Cir. 1995)). "[S]o long as a juvenile remains within the auspices of the FJDA for sentencing, he or she is presumptively capable of rehabilitation, and any sentence imposed by a district court must accord with this presumption." *Id.*

The FJDA includes a number of provisions to ensure that information about juvenile delinquency proceedings remains safeguarded. 18 U.S.C. § 5032 provides that "any proceedings against" an alleged juvenile delinquent "may be convened at any time and place within the district, in chambers or otherwise." 18 U.S.C. § 5038(a) further provides that "[t]hroughout and upon the completion of the juvenile delinquency proceeding, the records shall be safeguarded from disclosure to unauthorized persons." 18 U.S.C. § 5038(a). "[I]nformation about the juvenile record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right or privilege," except for in limited circumstances relating to court proceedings, treatment, law enforcement investigation, or national security. *Id.* Moreover, the statute specifies that the identity and image of the juvenile may not be disclosed even where proceedings are opened or documents are released: "neither the name nor picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding." 18 U.S.C. § 5038(e).

C.   The Sex Offender Registration and Notification Act ("SORNA")

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act, 42 U.S.C. § 16901 *et seq.*, which includes the Sex Offender Registration and Notification Act ("SORNA"). Congress enacted SORNA "[i]n order to protect the public from sex offenders and offenders against children,

and in response to the vicious attacks by violent predators." 42 U.S.C. § 16901. SORNA thus "establishes a comprehensive national system for the registration of those offenders." *Id.*

SORNA defines "sex offender" as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). The statute also specifies that:

> The term "convicted" or a variant thereof, used with respect to a sex offense, *includes adjudicated delinquent as a juvenile for that offense*, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse (as described in section 2241 of Title 18), or was an attempt or conspiracy to commit such an offense.

42 U.S.C. § 16911(8) (emphasis added). Under 18 U.S.C. § 2241(c), any person who "knowingly engages in a sexual act with another person who has not attained the age of 12 years" may be convicted of aggravated sexual abuse. *Id.* Any individual convicted of violating 18 U.S.C. § 2241 is classified as a "Tier III sex offender" under SORNA. 42 U.S.C. § 16911(4).[1]

Under SORNA's comprehensive national registration system, sex offenders must "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The offender must "appear in person, allow the jurisdiction to take a current photograph,

---

[1]All three defendants were over the age of 14 when the alleged offenses occurred, and each pleaded true to the information for committing an act of juvenile delinquency for what would have been a violation of 18 U.S.C. § 2241. Under the specific terms of SORNA, they thus qualify as "Tier III" sex offenders.

and verify the information in each registry." 42 U.S.C. § 16916. Each jurisdiction must make public the contents of its sex offender registry, including each registrant's name, address, photograph, criminal history, and status of parole, probation, or supervised release. 42 U.S.C. §§ 16914(b), 16918(a). Tier III sex offenders must register with the applicable jurisdiction every 3 months. *Id.* The registration period for a Tier III offender is for life, 42 U.S.C. § 16915(a)(3), with the possibility of a reduced period of 25 years if the offender maintains a clean record, 42 U.S.C. § 16915(b)(2)-(3).

## II.   Mootness

For a case or controversy to be justiciable under Article III, it must remain "extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). "[T]hroughout the litigation," the party seeking relief " 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).[2]

In *United States v. Juvenile Male (Juvenile Male II)*, 131 S. Ct. 2860 (2011), *vacating* 590 F.3d 924 (9th Cir. 2010), the

---

[2]The Supreme Court has recognized "numerous exceptions to mootness." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1141 (9th Cir. 2005) (en banc) (W. Fletcher, J., dissenting). These exceptions include cases involving a party that voluntarily ceases the offending conduct, but remains "free to return to his old ways," *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953), wrongs that are "capable of repetition, yet evading review," *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (internal quotation marks omitted), and class action suits where the named plaintiff's case is moot, *Sosna v. Iowa*, 419 U.S. 393, 399-401 (1975). Because we conclude that the consolidated appeals before us are not moot, we need not analyze any of these exceptions.

Supreme Court found that an appeal of a similar sex offender registration condition was moot because the order of juvenile supervision imposing the condition had expired prior to the Ninth Circuit's decision.[3] *Id.* at 2864. The defendant in *Juvenile Male II* pleaded true to charges that he engaged in sexual acts that, if he had been an adult, would have constituted aggravated sexual assault. *Id.* at 2862 (citing 18 U.S.C. §§ 1153(a), 2241(c)). The defendant was sentenced to official detention followed by a period of juvenile supervision, with the condition that he register as a sex offender, until his twenty-first birthday. *Id.* Defendant challenged the registration condition, but while his appeal was pending before us, he turned twenty-one and the supervision order requiring him to register as a sex offender expired. *Id.* at 2863. The Supreme Court found that the expiration of the order rendered the appeal moot, because the defendant was "no longer subject to the sex-offender-registration condition that he sought to challenge on appeal." *Id.* at 2864.

In criminal cases, a defendant wishing to continue an appeal after the expiration of his or her sentence must suffer some "continuing injury" or "collateral consequence" sufficient to satisfy Article III. *See Spencer*, 523 U.S. at 7-8. Accordingly, to determine whether there was an ongoing "collateral consequence," the Court, in *United States v. Juvenile Male* (*Juvenile Male I*), 130 S. Ct. 2518 (2010), had certified a question to the Montana Supreme Court, inquiring whether

> [R]espondent's duty to remain registered as a sex offender under Montana law [was] contingent upon

---

[3]The Ninth Circuit's vacated opinion in *United States v. Juvenile Male*, 590 F.3d 924, addressed the retroactive application of SORNA's registration requirement to persons adjudicated delinquent before SORNA was enacted by virtue of the Attorney General's promulgation of 28 C.F.R. § 72.3 pursuant to Congress's delegation of authority in 42 U.S.C. § 16913(d).

the validity of the conditions of his now-expired federal juvenile-supervision order that required him to register as a sex offender, or is the duty an independent requirement of Montana law that is unaffected by the validity or invalidity of the federal juvenile-supervision conditions?

*Id.* at 2519-20 (citations omitted). The Montana Supreme Court responded that the "state law duty to remain registered as a sex offender is not contingent upon the validity of the conditions of his federal supervision order, but is an independent requirement of Montana law." *Juvenile Male II*, 131 S. Ct. at 2863 (internal quotation marks omitted). The U.S. Supreme Court then concluded, on the ground that any decision an appellate court could make would have no effect, not even on the state registration requirement, that the "Ninth Circuit lacked the authority under Article III to decide this case on the merits." *Id.* at 2865.

**[1]** The government argues that the three consolidated cases under review here are similarly moot because the defendants "are required to register independently under Montana state law regardless of any decision by this Court addressing their SORNA obligations under federal law." We disagree. First, each of the juvenile defendants in this case is currently subject to an unexpired condition of his release or supervision requiring sex offender registration under SORNA. Indeed, the conditions requiring registration will remain in effect until August 23, 2012 for I.M.T.D., September 17, 2012 for M.M.R., and March 2014 for L.L.S. Second, in addition to those conditions, all three defendants are subject to SORNA's independent registration requirement for a period of at least twenty-five years, if not for the duration of their life, because of their status as Tier III sex offenders. 42 U.S.C. § 16915(a)(3), (b)(2)-(3). This federal requirement that the defendants register as sex offenders is independent from any requirement under state law. Because this federal requirement remains in effect, whether defendants are properly subject to

SORNA's registration requirement remains a live controversy for us to adjudicate, and these consolidated appeals thus are not moot.

**[2]** In *Juvenile Male II*, the Supreme Court considered and rejected the argument that the appeal in that case " 'cannot be considered moot in any practical sense' because . . . respondent may have 'an independent duty to register as a sex offender' under SORNA itself." 131 S. Ct. at 2864-65. The Supreme Court held that because the defendant had only challenged the validity of the special conditions of supervision, any broader question related to SORNA's requirement was not at issue. *Id.* at 2865. The Court did acknowledge that the independent, continuing obligation under SORNA, in another case, "might provide grounds for a pre-enforcement challenge to SORNA's registration requirements." *Id.* The instant consolidated appeal is precisely such a case, as each defendant objects both specifically to the special condition requiring registration and generally to the constitutionality of SORNA as applied to juveniles, and therefore is not moot.

## III.   Conflict Between FJDA and SORNA

We next consider whether the SORNA registration requirement imposed by the district court contravenes the confidentiality provisions of the FJDA. We review a district court's construction or interpretation of a statute de novo. *See Beeman v. TDI Managed Care Servs*. 449 F.3d 1035, 1038 (9th Cir. 2006); *United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc).

The government argues that SORNA and the FJDA do not conflict because they each operate on different classes of individuals and agencies. Specifically, it contends that the FJDA's confidentiality provisions restrict disclosure of the records of juvenile proceedings by employees of the court or any government agency, 18 U.S.C. § 5038(c), while SORNA's reporting requirements operate directly on the juvenile himself. We

disagree with that characterization, and find that several provisions of the two statutes conflict because SORNA's registration provision makes public information that would otherwise remain confidential under the FJDA.

**[3]** The FJDA provides that "[u]nless a juvenile who is taken into custody is prosecuted as an adult neither the *name* nor *picture* of any juvenile shall be made public in connection with a juvenile delinquency proceeding." 18 U.S.C. § 5038(e) (emphasis added). The FJDA further provides that "information about the juvenile record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right or privilege." 18 U.S.C. § 5038(a). SORNA, however, requires that a sex offender registry include the *name*, address, physical description, criminal history and status of parole, probation, or supervised release, *current photograph*, and other identifying information. 42 U.S.C. § 16914. SORNA further requires that "each jurisdiction shall make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." 42 U.S.C. § 16918(a). Because it is clear that the government's public release of juvenile records authorized by SORNA would have been prohibited under the FJDA prior to the passage of SORNA, we find that the two statutes conflict.

Where two statutes conflict, the later-enacted, more specific provision generally governs. *See Acosta v. Gonzales*, 439 F.3d 550, 555 (9th Cir. 2006) ("[C]onflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute." (internal quotation marks omitted)), *abrogated on other grounds by Garfias-Rodriguez v. Holder*, 649 F.3d 942, 948 (9th Cir. 2011). SORNA unambiguously directs juveniles over the age of 14 convicted of certain aggravated sex crimes to register, and thus carves out a narrow category of juvenile delinquents who must disclose their juvenile crimes by registering as a sex offender. For all other juvenile

delinquents, the FJDA's confidentiality provisions remain in force.

**[4]** The relationship between SORNA and the FJDA is further clarified by Congress's clearly stated intent to limit confidentiality in the case of certain juvenile sex offenders. *See* H.R. Rep. 109-218, pt. 1, at 25 (2005) ("While the Committee recognizes that States typically protect the identity of a juvenile who commits criminal acts, in the case of sexual offenses, the balance needs to change; no longer should the rights of the juvenile offender outweigh the rights of the community and victims to be free from additional sexual crimes . . . . H.R. 3132 strikes the balance in favor of protecting victims, rather than protecting the identity of juvenile sex offenders."); 152 Cong. Rec. S8012, S8023 (daily ed. July 20, 2006) (statement of Sen. Kennedy) ("This compromise allows some offenders over 14 to be included on registries, but only if they have been convicted of very serious offenses."). Thus, Congress was aware that it was limiting protections under the FJDA by applying SORNA to certain juvenile delinquents, and intended to do so.

**[5]** We therefore hold that the district court properly applied SORNA's registration requirements to the juvenile defendants in these cases. Although the defendants may disagree with the policy implications of SORNA, particularly with regard to confidentiality, Congress appears to have considered those concerns in enacting SORNA. Our review is limited to interpreting the statutes, and both the statutory text and legislative history of SORNA suggest its reporting and registration requirements were intended to reach a limited class of juveniles adjudicated delinquent in cases of aggravated sexual abuse, including appellants.

### IV. Constitutional Challenges

Defendants further argue that subjecting juvenile sex offenders to SORNA's registration is unconstitutional. In par-

ticular, they allege that doing so violates (i) the equal protection clause; (ii) the prohibition against cruel and unusual punishment; (iii) the right against self-incrimination; (iv) substantive due process; (v) procedural due process; and (vi) the right to effective counsel. We review the constitutionality of a statute de novo. *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002) (citing *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567 (9th Cir. 1993)).

## A.  Equal Protection

Defendants argue that SORNA's registration requirements violate the juveniles' right to equal protection by irrationally distinguishing between juvenile sex offenders over fourteen, who are categorically required to register as sex offenders, and other juvenile offenders, who are entitled to an adversary hearing on whether transfer to adult court is appropriate.

**[6]** The Equal Protection Clause of the Fourteenth Amendment applies strict scrutiny if the aggrieved party is a member of a protected or suspect class, or otherwise suffers the unequal burdening of a fundamental right. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-40 (1985). "Government actions that do not . . . involve suspect classifications will be upheld if [they] are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005).

**[7]** However, defendants — juvenile sex offenders over the age of fourteen — do not fall within a protected class. We have previously rejected the argument that sex offenders are a suspect or protected class. *United States v. LeMay*, 260 F.3d 1018, 1030-31 (9th Cir. 2001). Further, "age is not a suspect classification under the Equal Protection Clause." *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (citing *City of Cleburne*, 473 U.S. at 441 ("We have declined, however, to extend heightened review to differential treatment based on age")).

This conclusion is consistent with that of the Sixth Circuit, which heard an equal protection challenge to a similar juvenile registration requirement in *Doe v. Michigan Department of State Police,* 490 F.3d 491 (6th Cir. 2007). There, the defendants challenged a Michigan sex offender registration program, in part, because it "requir[ed] youthful trainees charged with sex offenses to register while not requiring youthful trainees charged with other offenses to do so." *Id.* at 502. The Sixth Circuit, noting that the set of suspect classifications recognized by the Supreme Court was limited, held that "the classification raised by the plaintiffs does not implicate a suspect class and that rational-basis review is accordingly appropriate." *Id.* at 503.

**[8]** Because defendants in this case have failed to establish membership in a recognized protected class, SORNA is subject to rational basis review for the purpose of equal protection analysis. SORNA's language and legislative history clearly indicate the legislative purpose for which it was enacted. *See* 42 U.S.C. § 16901 (in enacting SORNA, "Congress . . . establishes a comprehensive national system" that is designed to "protect the public from sex offenders and offenders against children"); Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8895 (Feb. 28, 2007) (noting that SORNA was "designed . . . for the protection of the public"). We have held that protecting our communities is a legitimate legislative purpose. *See Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (holding, with regard to Alaska's sex offender registration laws, that "the statute's provisions serve a 'legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community' ") (internal quotation marks omitted). The Supreme Court has also held that "there is no doubt that preventing danger to the community is a legitimate regulatory goal." *United States v. Salerno*, 481 U.S. 739, 747 (1987). Thus, SORNA's requirements satisfy rational basis review and do not violate the Equal Protection Clause.

B.    Cruel and Unusual Punishment

Defendants argue that by sanctioning a class of juvenile offenders with registration requirements, SORNA violates the Eighth Amendment's prohibition on cruel and unusual punishment.

**[9]** The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The amendment prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 303 (1983) (holding that defendant's Eighth Amendment right was violated where defendant received the "penultimate sentence" for a minor, check writing offense).

The bar for cruel and unusual punishment is high. *See, e.g.*, *United States v. Nagel*, 559 F.3d 756, 763 (7th Cir. 2009) (citing *Ewing v. California*, 538 U.S. 11, 28-30 (2003) (affirming sentence of 25 years to life imposed for felony grand theft of three golf clubs under three strikes law); *Harmelin v. Michigan*, 501 U.S. 957, 961, 966 (1991) (affirming life in prison without the possibility of parole for first-time offender possessing 672 grams of cocaine); *Hutto v. Davis*, 454 U.S. 370, 370-71 (1982) (no constitutional error in two consecutive terms of 20 years in prison for possession with intent to distribute and distribution of 9 ounces of marijuana)).

**[10]** Although defendants understandably note that SORNA may have the effect of exposing juvenile defendants and their families to potential shame and humiliation for acts committed while still an adolescent, the statute does not meet the high standard of cruel and unusual punishment. The requirement that juveniles register in a sex offender database for at least 25 years because they committed the equivalent of aggravated sexual abuse is not a disproportionate punishment. These juveniles do not face any risk of incarceration or threat

of physical harm. In fact, at least two other circuits have held that SORNA's registration requirement is not even a punitive measure, let alone cruel and unusual punishment. *See United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) ("SORNA's registration requirement demonstrates no congressional intent to punish sex offenders"); *see also United States v. Young*, 585 F.3d 199, 204-05 (5th Cir. 2009).

**[11]** Given the high standard that is required to establish cruel and unusual punishment, we hold that SORNA's registration requirements do not violate the Eighth Amendment.

C.   Self-Incrimination

Defendants argue that SORNA's registration requirement violates the self-incrimination clause of the Fifth Amendment by requiring registrants to file documents acknowledging commission of a sex offense. Because SORNA registrants are compelled to register under threat of legal sanction, and because the documents could potentially be used to prove the commission of a prior sex crime or in determining sentencing enhancements, defendants argue that the registration requirement is unconstitutional.

**[12]** The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This protection extends not only to criminal proceedings, but any proceeding in which the answers might incriminate the individual in a *future* criminal proceeding. *Allen v. Illinois*, 478 U.S. 364, 368 (1986) (emphasis added). "[T]he Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." *Balt. Dep't of Social Servs. v. Bouknight*, 493 U.S. 549, 556 (1990).

**[13]** The registration required under SORNA does not subject the defendants to any additional criminal exposure or lia-

bility. Rather, it requires only an acknowledgment that they have been previously adjudicated or convicted of a crime. The Fifth Amendment is designed to protect against prospective incrimination, but here the defendants have already pleaded true to the underlying criminal conduct. Other circuits have also rejected Fifth Amendment challenges to sex offender registration. *See, e.g.*, *United States v. Simon-Marcos*, 363 Fed. App'x 726, 728 (11th Cir. 2010) ("[Defendant] cannot show, and does not attempt to show, that anything he would have been required to provide under Georgia's sex offender statute would have confronted him with a substantial hazard of self-incrimination."); *Doe v. Miller*, 405 F.3d 700, 717-18 (8th Cir. 2005) (holding that Fifth Amendment challenge to sex offender registration statute "is both misdirected and premature").

Review of the cases in which the Supreme Court concluded that registration requirements violate the self-incrimination clause is instructive. In these cases, it is evident that an unconstitutional registration would require disclosure that is effectively an admission of uncharged criminal activity. *See, e.g.*, *Leary v. United States*, 395 U.S. 6 (1969) (invalidating statute requiring defendant to identify himself as transferee of marijuana who had failed to register and pay an occupational tax); *Haynes v. United States*, 390 U.S. 85 (1968) (striking down statute that required registration of individuals transacting in firearms and that was applied only to weapons used principally by persons engaged in unlawful activities); and *Marchetti v. United States*, 390 U.S. 39, 60-61 (1968) (striking down statute requiring gamblers to register with the Internal Revenue Service, in light of wide prohibition of gambling). Under these statutes, compliance with the disclosure requirements "produced an immediate or real and appreciable hazard of self-incrimination due to the fact that the statutes were largely designed to discover . . . involvement in the prohibited activity." *S.E.C. v. Fehn*, 97 F.3d 1276, 1292 (9th Cir. 1996) (internal quotation marks omitted). That is not the case with SORNA, which does not require the disclosure

of any information that would constitute admission of an uncharged crime.

**[14]** Because defendants fail to establish that registration under SORNA could subject them to future criminal liability, they cannot properly avail themselves of the Fifth Amendment's protections against self-incrimination.

D.   Substantive Due Process

Defendants argue that SORNA's registration requirement violates their substantive due process rights because it discards their "right to lifetime confidentiality" under the FJDA and subjects them to "onerous lifetime probation."

**[15]** The Due Process Clause protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). In a substantive due process analysis, we must first consider whether the statute in question abridges a fundamental right. *Reno v. Flores*, 507 U.S. 292, 302 (1993) (explaining that the analysis begins with a "careful description of the asserted right"). If it does, the statute will be subject to strict scrutiny and is invalidated unless it is "narrowly tailored to serve a compelling state interest." *Id.* If not, the statute need only bear a "reasonable relation to a legitimate state interest to justify the action." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997).

**[16]** Defendants fail to identify the fundamental right implicated by SORNA's registration requirement, and instead focus on whether the statute is penal in nature under the factors laid out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). The Supreme Court has described the "fundamental" rights protected by substantive due process as "those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that

they are protected by the Fourteenth Amendment." *Glucks-berg*, 521 U.S. at 727. Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment. *Id.* at 720. None of these rights are, or could be, asserted by defendants in this case. Nor do any of defendants' rights that are potentially at stake appear to be "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964), and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed," *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937).

This conclusion is consistent with our holding in *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004), where we found that individuals convicted of serious sex offenses do not have a fundamental right to be free from sex offender registration requirements, and that such requirements serve "a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community." *Id.* (internal quotation marks omitted). Several other circuits have similarly rejected substantive due process challenges to sex offender registration, holding that sex offenders do not have a fundamental right to avoid publicity. *See, e.g.*, *United States v. Ambert*, 561 F.3d 1202, 1209 (11th Cir. 2009) (holding that the right of a sex offender to refuse subsequent registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website is not a right that is "deeply rooted in this Nation's history and tradition"); *Does v. Munoz*, 507 F.3d 961, 965-66 (6th Cir. 2007) (holding that juvenile sex offenders' interest in private records was not a fundamental right); *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (holding that juvenile sex offender registration "does not rise to the level of a

substantive due process violation based upon the relevant caselaw, but the inconsistency and the harms to the plaintiffs from their inclusion on the registry are troubling and noteworthy").

**[17]** Given the limited range of rights that have been recognized as "fundamental" for the purposes of substantive due process analysis, defendants have failed to establish a substantive due process violation.

### E. Procedural Due Process

Defendants argue that SORNA's registration requirement violates their procedural due process rights by treating their juvenile adjudication as a criminal conviction and subjecting them to the resulting publicity, without the benefit of a public jury trial or transfer hearing.

We analyze a procedural due process claim in two steps. " '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

**[18]** Defendants argue that the interest at stake is their expectation of confidentiality in juvenile proceedings, which they allege is undermined by SORNA's public registration requirements. However, SORNA does not render the entire juvenile adjudication process public. Juvenile sex offenders can still avail themselves of closed hearings, sealed records, and the other procedural protections of the juvenile process. But more importantly, because we conclude that the confidentiality provisions of the FJDA were intentionally superseded by the passage of SORNA, the underlying interest in confidentiality that defendants rely upon no longer exists. In the absence of that specific statutory right, defendants offer no

support for the notion that they have a broader right. In fact, the Supreme Court has held that adverse publicity or harm to the reputation of sex offenders does not implicate a liberty interest for the purposes of due process analysis. *Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7 (2003).

Defendants rely heavily on the factors set forth in *Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), to establish that SORNA is a punitive statute, and thus necessarily deprives them of a liberty or property interest. Whether SORNA is punitive is not dispositive. Even if defendants were correct that SORNA is punitive, that does not necessarily give rise to a protected liberty interest for the purposes of due process. We have recognized that constitutionally protected liberty interests can be created where a law sets forth "substantive predicates to govern official decision making" and contains "explicitly mandatory language" that mandates a particular outcome. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002) (internal quotation marks omitted). However, no such legal basis exists here, as the FJDA's provisions have been superseded by SORNA. Our conclusion is consistent with that of other circuits that have considered this question, each rejecting the argument that SORNA is a punitive statute and characterizing it instead as a civil regulation.[4] *See, e.g.*, *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) ("SORNA's registration requirement demonstrates no congressional intent to punish sex offenders"); *see also United States v. Young*, 585 F.3d 199, 204-05 (5th Cir. 2009) ("[W]e now hold — in line with all of our sister Circuits to have considered the issue — that SORNA is a civil regulation").

[19] Even if defendants had sufficiently identified an interest at stake, juvenile offenders would not be entitled to any

---

[4]Because we need not reach this question to determine whether SORNA's registration provision violates Defendants' procedural due process rights or constitutes cruel and unusual punishment, we do not specifically adopt this holding for the Ninth Circuit.

additional process before they are subject to SORNA's registration requirements. Additional process is only necessary where it gives a sex offender the ability to prove or disprove facts related to the applicability of the registration requirement. In other words, where "the law's requirements turn on an offender's conviction alone — a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest" — no additional process is required for due process. *Doe v. Tandeske*, 361 F.3d 594, 596 (9th Cir. 2004) (internal quotation marks omitted) (rejecting procedural due process challenge to state sex offender registration statute where additional process would be a "bootless exercise" because the only relevant fact to whether registration is required is whether a conviction exists); *see also Conn. Dep't of Pub. Safety*, 538 U.S. at 7-8 (denying procedural due process challenge to state sex offender registry where registration was required by the fact of conviction as sex offender, irrespective of any other factors, thus rendering any additional process meaningless and unnecessary). In this case, juvenile sex offenders are required to register on the basis of their adjudicated juvenile status, which explicitly triggers SORNA's requirements under 42 U.S.C. § 16913. Thus, because defendants are not challenging whether they received adequate due process in their juvenile proceedings, there is no basis for a procedural due process claim.

Further, adequate procedural safeguards at the conviction stage are sufficient to obviate the need for any additional process at the registration stage. *United States v. Fernandes*, 636 F.3d 1254, 1257 (9th Cir. 2011) ("Defendant was afforded due process in his criminal proceeding and chose to plead guilty to a sex offense. Requiring Defendant to register as a sex offender does not violate his right to procedural due process."). The purpose of due process is to protect juvenile sex offenders from unjust registry, but any juvenile required to register under SORNA was protected at their adjudication by the "fundamental fairness" standard. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1970).

Defendants may have serious concerns about the policy ramifications of SORNA, particularly with regard to confidentiality. However, even if SORNA subjects juvenile sex offenders to a condition that adult sex offenders must comply with, that does not necessarily eradicate all differences between the adult and juvenile processes and transform the latter into a "criminal" proceeding. Defendants' concerns about SORNA do not rise to a level that merits constitutional recourse on procedural due process grounds.

F.   Ineffective Assistance of Counsel

At the second oral argument in this case, defendants' counsel briefly raised, for the first time, an additional constitutional argument grounded in the Sixth Amendment's guarantee of effective assistance of counsel. Defendants' counsel failed to further explain the basis for this argument in any detail at oral argument, but did acknowledge it was not raised in any of the briefing.

Because this argument was not presented in the briefs — including those specifically invited by us on any constitutional issues implicated by SORNA — it has been forfeited. *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008) (holding that a party has waived an argument where it "fail[ed] to raise it either in the district court or in his brief on appeal, [and] mention[ed] it for the first time at oral argument"). " 'We review only issues [that] are argued specifically and distinctly in a party's opening brief.' " *Christian Legal Soc'y of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) (quoting *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010)). Applying this standard, we have refused to address claims that were only "argue[d] in passing," *Brownfield*, 612 F.3d at 1149 n.4, or that were "bare assertion[s] . . . with no supporting argument," *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008). We therefore decline to address Defendants' ineffective assistance of counsel argument.

## V. Conclusion

**[20]** We therefore affirm the district courts' imposition of SORNA's registration requirements as a condition of probation or supervision on the three juvenile defendants in this case.

**AFFIRMED.**