O’Donnell, J.,
dissenting.
{¶ 88} Respectfully, I dissent.
{¶ 89} In State v. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, I expressed my view in a dissenting opinion, that consistent with prior holdings of this court, the registration and notification requirements of S.B. 10 *537 are civil in nature and part of a regulatory scheme designed to protect the public from known sex offenders. Id. at ¶ 24-61. Because application of those requirements to juveniles pursuant to R.C. 2152.86 does not alter S.B. 10’s nonpunitive purpose, that view also applies to juveniles such as C.P.
Factual and Procedural Background
{¶ 90} In 2005, the state of Utah filed a petition charging C.P., then age 11, with destruction of property, sodomy, aggravated sexual abuse of a child, and rape of a child. The three latter charges stemmed from allegations that when C.P. was nine and ten years old, he had engaged in sexual conduct with his half-sister — three years younger — for several years. That conduct included making his sister perform strip acts, forcing her to perform and receive oral sex, exposing himself, and forcibly raping her. C.P. admitted to the charges of destruction of property, sodomy, and sexual abuse of a child, a charge which the state had reduced from aggravated sexual abuse of a child. The Utah juvenile court placed C.P. in the temporary custody of the Division of Child and Family Services for foster care, committed him to the Department of Juvenile Justice Services for 30 days, and ordered him to obtain sex-specific counseling. During a neuropsychological evaluation conducted in 2006, C.P. admitted the allegations involving his half-sister and also admitted to having “touched five or six other young girls inappropriately.”
{¶ 91} While in foster care in Utah, C.P. left his second foster home after being accused of touching a girl’s breast at school. He was then placed in the Youth Track residential program for juvenile sex offenders, where he received inpatient residential care from June 1, 2006, through November 3, 2008, when he returned home to live with his mother. C.P. participated in outpatient counseling, but discontinued taking his medications because he did not like how they made him feel.
{¶ 92} Thereafter, C.P.’s parents agreed that he might benefit from living with his father in Ohio, and in June 2009, he moved to Ohio. Within nine days of his arrival, C.P., then age 15, secluded himself with his six-year-old nephew and orally and anally raped him.
{¶ 93} The day after the incident, the state filed a complaint against C.P. in the Athens County Juvenile Court, charging him with two counts of child rape and one count of kidnapping with sexual motivation, each count a first-degree felony if committed by an adult. The state filed a motion pursuant to R.C. 2152.10(A)(1)(b), which sought to transfer jurisdiction of the case to the common pleas court to prosecute C.P. as an adult. After holding an amenability hearing, the trial court denied the state’s motion. The state then obtained an indictment against C.P. that contained a serious-youth-offender (“SYO”) specification for each count.
*538 {¶ 94} C.P. subsequently entered an admission to each charge in the indictment, and due to his age and the nature of his offenses, he was eligible for a discretionary SYO dispositional sentence pursuant to R.C. 2152.11(D)(2)(b). The court found him to be a delinquent child and designated him an SYO in relation to each offense. It committed C.P. to the Ohio Department of Youth Services for concurrent commitments on each count of a minimum period of three years and a maximum period not to exceed age 21. As part of the SYO disposition, the court imposed three concurrent five-year prison terms that were stayed pending C.P.’s successful completion of his juvenile dispositions. The court further classified C.P. as a public-registry-qualified juvenile-offender registrant (“PRQJOR”) pursuant to R.C. 2152.86(A)(1) and a Tier III sex-offender/child-victim offender pursuant to R.C. 2152.86(A)(1), and advised him of the duties imposed by that statute.
{¶ 95} C.P. appealed his classification as a Tier III offender and PRQJOR to the Fourth District Court of Appeals, arguing that R.C. 2152.86 violated his rights to due process and equal protection, as well as his right against cruel and unusual punishment. The court of appeals affirmed the judgment of the trial court.
The Majority Opinion
{¶ 96} The majority reverses the judgment of the court of appeals, finding that the registration and notification requirements of R.C. 2152.86 constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 9. The majority further finds that because the statute imposes those requirements automatically rather than at the discretion of a juvenile judge, it also violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 16.
{¶ 97} The Ohio General Assembly passed 2007 Am.Sub.S.B. No. 10 (“S.B. 10”) in accordance with legislation enacted by the United States Congress in an effort to create a national, uniform system of sex-offender registration. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 25. Amended by S.B. 10, R.C. 2950.02(B) declares the intent of the General Assembly “to protect the safety and general welfare of the people of this state” in providing for the registration and community notification of certain sex offenders, and it specifically included public-registry-qualified juvenile-offender registrants, such as C.P., among them. Id. It is undisputed that the General Assembly is “ ‘the ultimate arbiter of public policy’ ” and the only branch of government charged with fulfilling that role. Arbino v. Johnson & Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d *539 163, ¶ 21. And prior to this court’s abandonment of precedent in the majority opinion in Williams, we have historically construed registration statutes as part of a civil regulatory scheme and nonpunitive in nature.
{¶ 98} Accordingly, in my view, the General Assembly constitutionally enacted R. C. 2152.86 and imposed registration and notification requirements on certain juvenile sex offenders based on concerns for public safety and public welfare. Those requirements are not punitive and do not offend the Constitution. To the extent that any policy concern exists regarding the registration of juvenile sex offenders, it is within the sole province of the legislature to address that issue.
R.C. 2152.86 is not Punitive
{¶ 99} In State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn., 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 20, 73, this court reiterated that the constitutionality of a statute starts with a presumption of constitutionality based in part upon this court’s deference to the legislative branch on matters of public policy. The strong presumption of constitutionality is further supported by the requirement that before we can declare a statute unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. State v. Carswell, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 7. With respect to determining whether a registration statute is punitive, “ ‘only the clearest proof could suffice’ ” to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. United States v. Ward, 448 U.S. 242, 249, 100 S. Ct. 2636, 65 L.Ed.2d 742 (1980), quoting Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).
{¶ 100} The majority opinion begins with the premise that R.C. Chapter 2950 is punitive, and then it applies the two-part analysis discussed by the Supreme Court in Graham v. Florida, — U.S. —, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010). Graham held that a juvenile offender’s sentence of life imprisonment without the possibility of parole for convictions of non-homicide crimes violated the Eighth Amendment to the United States Constitution. The majority opinion today relies on Graham to conclude that the registration and notification requirements of R.C. 2152.86 constitute cruel and unusual punishment.
{¶ 101} The majority bases its conclusion on several factors: the lack of a national consensus favoring the publication of juvenile sex offenders’ personal information, its belief that juvenile sex offenders are less culpable and more capable of change than adult sex offenders, and its position that the requirements of the statute are especially harsh because a juvenile offender will begin adulthood with the stigma associated with being labeled a sex offender, which in turn will hamper education, relationships, and employment opportunities. The majority further finds that R.C. 2152.86 does not advance penological goals. *540 Under the guise of exercising the independent judgment permitted by the test in Graham, the majority impermissibly supplants the judgment of the General Assembly with its own beliefs.
{¶ 102} Registration has historically been viewed as a regulatory measure and not as a form of punishment. See, e.g., R.W. v. Sanders, 168 S.W.3d 65, 69 (Mo.2005), citing Lambert v. California, 355 U.S. 225, 229, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); In re Richard A., 946 A.2d 204, 213 (R.I.2008) (sex-offender registration requirement for juveniles did not constitute punishment and was found constitutional). In Smith v. Doe, the court rejected analogies between sex-offender registration and “shaming punishments of the colonial period.” 538 U.S. 84, 97, 123 S.Ct. 1140, 155 L.E.2d 164 (2003). “Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment.” Id. at 98.
{¶ 103} As applied to juveniles, courts have rejected the argument that statutes subjecting juveniles to public registration are punitive because of the unpleasant consequences that may flow from registration or the length of time a juvenile may be required to report. In United States v. Juvenile Male, the Ninth Circuit Court of Appeals recently rejected the conclusion reached here by the majority, determining that the registration and notification requirements imposed by the federal Sex Offender Registration and Notification Act (“SORNA”) on juveniles do not constitute cruel and unusual punishment. 670 F.3d 999, 1010-1011 (2012). After noting that “[t]he bar for cruel and unusual punishment is high,” the court went on to explain:
Although defendants understandably note that SORNA may have the effect of exposing juvenile defendants and their families to potential shame and humiliation for acts committed while still an adolescent, the statute does not meet the high standard of cruel and unusual punishment. The requirement that juveniles register in a sex offender database for at least 25 years because they committed the equivalent of aggravated sexual abuse is not a disproportionate punishment. These juveniles do not face any risk of incarceration or threat of physical harm. In fact, at least two other circuits have held that SORNA’s registration requirement is not even a punitive measure, let alone cruel and unusual punishment. See United States v. May, 535 F.3d 912, 920 (8th Cir.2008) (“SORNA’s registration requirement demonstrates no congressional intent to punish sex offenders”); see also United States v. Young, 585 F.3d 199, 204-05 (5th Cir.2009).

*541
Id.

{¶ 104} In the case of In re Ronnie A., the Supreme Court of South Carolina reiterated its prior holding that “sex offender registration, regardless of the length of time, is non-punitive” and saw no reason to distinguish juvenile sex offenders. 355 S.C. 407, 409, 585 S.E.2d 311 (2003). Although the juvenile at issue did not have to be placed on the public registry because he was under 12 years of age at the time of his adjudication, the statute being challenged, S.C.Code Ann. 23-3-490, required public registration for offenders older than 12 for certain offenses.
{¶ 105} Additionally, although the Supreme Court of South Dakota struck down that state’s public-registration statute on equal protection grounds, it reiterated its position that public registration is not punitive. See In re Z.B., 2008 S.D. 108, 757 N.W.2d 595, ¶ 24. “Such measures are not penal; they are regulatory.” Id. South Dakota amended its sex-offender registration statute in 2010, and the current version still requires juveniles over the age of 14 to publicly register as sex offenders for certain offenses. S.D. Codified Laws 22-24B-2.
{¶ 106} Although the majority finds juvenile sex offenders less culpable than their adult counterparts, juveniles commit more than 25 percent of all sex offenses and more than 35 percent of all sex offenses against children. Finkelhor, Ormrod & Chaffin, Juveniles Who Commit Sex Offenses Against Minors, Office of Juvenile Justice and Delinquency Preventions, Juvenile Justice Bulletin 3 (Dec. 2009). In fact, C.P. was a repeat offender, and all of his victims were other juveniles; by invalidating R.C. 2152.86, as applied to juveniles such as C.P., the majority leaves the public unaware of a significant number of sex offenders who are capable of reoffending, directly contrary to the intent of the General Assembly and contrary to our precedent and determinations of constitutionality that exist in our sister states.
{¶ 107} Moreover, this court has previously recognized that an offense committed as a juvenile may have adverse consequences on the offender as an adult. In State v. Adkins, 129 Ohio St.3d 287, 2011-Ohio-3141, 951 N.E.2d 766, we held that a juvenile adjudication could serve as one of the five prior similar offenses necessary to enhance a charge of operating a motor vehicle while under the influence of alcohol because R.C. 2901.08 expressly includes juvenile adjudications among the offenses that may be used for penalty enhancement. We specifically noted that “R.C. 2901.08 did not change [the] juvenile adjudication; it merely added another type of legal violation as an aggravating offense under R.C. 4511.19(G)(1)(d).” Id. at ¶ 17. Similarly, the requirements of R.C. 2152.86 do not convert a PRQJOR’s adjudication into a criminal one.
*542 {¶ 108} With respect to the argument that public registration constitutes punishment because of the potential for adversely affecting a juvenile’s future employment, the Supreme Court of the United States has held occupational debarment to be regulatory, and therefore civil in nature. See, e.g., Hudson v. United States, 522 U.S. 93, 104-105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); De Veau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960); Hawker v. New York, 170 U.S. 189, 196, 18 S.Ct. 573, 42 L.Ed. 1002 (1898).
{¶ 109} Nor is R.C. 2152.86 at odds with the goals promoted by R.C. 2152.01. The legislative intent underlying the enactment of R.C. 2152.86 was to protect the public, and that goal is shared by R.C. 2152.01(A). The majority questions whether R.C. 2152.86 actually furthers public interest and public safety because juvenile judges have no discretion in determining if a juvenile is dangerous or what level of registration or notification would be adequate. “Questions concerning the wisdom of legislation are ‘for the legislature, and whether the court agrees with it in that particular or not is of no consequence.’ ” Butler v. Jordan, 92 Ohio St.3d 354, 376, 750 N.E.2d 554 (2001) (Cook, J., concurring in judgment), quoting State Bd. of Health v. Greenville, 86 Ohio St. 1, 20, 98 N.E. 1019 (1912).
{¶ 110} R.C. 2152.86 also does not frustrate the purpose of Juv.R. 37(B), which is to protect children by keeping their juvenile court records confidential. First, the proceedings in juvenile court maintain their confidential status because the obligation to register does not arise until the successful completion of the juvenile disposition, see R.C. 2152.86(A)(2); thus, because the welfare of “a child” is no longer at stake, the underlying interest in confidentiality no longer exists. Second, the confidentiality requirement imposed by Juv.R. 37(B) is not applicable when statutes provide for disclosure; thus, R.C. 2152.86 supersedes the confidentiality provision of Juv.R. 37.
{¶ 111} For the foregoing reasons, the requirements of R.C. 2152.86 are not punitive and do not constitute cruel and unusual punishment. The General Assembly enacted R.C. 2152.86 pursuant to its authority and with the intent to protect the safety and welfare of the public. Moreover, it cannot be disputed that preventing crime “persists undiluted in the juvenile context.” Schall v. Martin, 467 U.S. 253, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). Thus, the statute is not unconstitutional.
R.C. 2152.86 Meets the Requirements of Due Process and Fundamental Fairness
{¶ 112} Courts have rejected challenges to registration statutes based on alleged violations of due process. In Connecticut Dept. of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the Supreme Court construed Connecticut’s version of Megan’s Law and held that procedural due process did not entitle a convicted sex offender to a hearing on current dangerousness before *543 requiring registration. The court found it unnecessary to determine whether registration deprived offenders of a liberty interest “because even assuming, arguendo, that [an offender] has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute.” Id. at 7. The court further explained that “[persons] who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme.” Id. at 8. See also People ex rel. Birkett v. Konetski, 233 Ill.2d 185, 330 Ill.Dec. 761, 909 N.E.2d 783 (2009) (rejecting the argument that due process requires jury trial before a court may impose registration requirements on juveniles); People ex rel. C.B.B., 75 P.3d 1148 (Colo.App.2003) (“C.B.B. has no procedural due process right to a hearing to prove a fact immaterial to the state’s statutory scheme before being required to register as a sex offender under the Act”).
{¶ 113} Rejecting a similar argument, the Ninth Circuit in United States v. Juvenile Male, explained:
Additional process is only necessary where it gives a sex offender the ability to prove or disprove facts related to the applicability of the registration requirement. In other words, where “the law’s requirements turn on an offender’s conviction alone — a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest” — no additional process is required for due process. Doe v. Tandeske, 361 F.3d 594, 596 (9th Cir.2004). In this case, juvenile sex offenders are required to register on the basis of their adjudicated juvenile status, which explicitly triggers SORNA’s requirements under 42 U.S.C. § 16913. Thus, because defendants are not challenging whether they received adequate due process in their juvenile proceedings, there is no basis for a procedural due process claim.
Further, adequate procedural safeguards at the conviction stage are sufficient to obviate the need for any additional process at the registration stage.
Juvenile Male, 670 F.3d at 1014.
{¶ 114} As applied here, C.P. cannot establish a due process violation based on the fact that R.C. 2152.86 imposes automatic registration, as opposed to registration imposed by an exercise of judicial discretion, because whether a juvenile sex offender has been sufficiently rehabilitated is not material to the statute’s operation; it is the adjudication that triggers the duty to register. There is no *544 constitutional requirement that juveniles must receive greater due process than adults.
{¶ 115} Discretion is a matter of grace and not of right. Thus, the General Assembly was within its authority to impose automatic registration on juvenile sex offenders when it enacted R.C. 2152.86. Accordingly, the statute meets the requirements of due process and does not offend notions of fundamental fairness.
Conclusion
{¶ 116} R.C. 2152.86 is constitutional and does not violate the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution or the Ohio Constitution, Article I, Section 9, nor does it violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution or the Ohio Constitution, Article I, Section 16. -
{¶ 117} The General Assembly enacted R.C. 2152.86 pursuant to its proper authority and in furtherance of the legitimate goals of public safety and public welfare. It is not the function of this court to substitute its judgment for that of the General Assembly.
{¶ 118} For these reasons, I would affirm the judgment of the court of appeals and hold that R.C. 2152.86 is constitutional.