REVISED October 8, 2009

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 7, 2009

Charles R. Fulbruge III
Clerk

No. 08-51047

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

NORMAN LAMAR YOUNG,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:

Norman Lamar Young – a sex offender – appeals his conviction under 18 U.S.C. § 2250(a) for traveling in interstate commerce and then knowingly failing to update his registration information as required by the Sex Offender Registration and Notification Act (SORNA).  Young contends that, as applied to him, SORNA violates his constitutional right to be free from ex post facto punishment.  It does not, so we affirm.

# I. BACKGROUND

## A. SORNA Statutory Framework

On July 27, 2006, President George W. Bush signed into law the Adam Walsh Child Protection and Safety Act of 2006.[1] Title I of the Act includes SORNA, which "establishes a comprehensive national system for the registration of [sex] offenders."[2] "[I]n response to the vicious attacks by violent predators," Congress sought through SORNA "to protect the public from sex offenders and offenders against children . . . ."[3]

SORNA requires sex offenders to register in each jurisdiction in which they reside or work.[4] And sex offenders must update their registration information within three business days of any change in residence or employment.[5] Failure to abide by these requirements can subject the sex offender to prosecution. Indeed, a sex offender who "travels in interstate or foreign commerce" and then "knowingly fails to register or update a registration . . . shall be fined . . . or imprisoned not more than 10 years, or both."[6]

Congress left it to the Attorney General's discretion whether SORNA would apply to sex offenders convicted before the Act's passage: "The Attorney

---

[1]Pub. L. No. 199-248, §§ 101-155, 120 Stat. 587, 590-611 (2006).

[2]42 U.S.C. § 16901.

[3]42 U.S.C. § 16901.

[4]42 U.S.C. § 16913(a).

[5]42 U.S.C. § 16913(c).

[6]18 U.S.C. § 2250(a).

General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act . . . ."[7] Pursuant to this authority, Attorney General Alberto Gonzales issued an interim rule that became effective on February 28, 2007: "The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."[8] This rule became final on April 30, 2007.[9]

## B. Facts

Norman Lamar Young is a sex offender. Indeed, on November 29, 2001, he pleaded guilty in Texas state court to one count of Indecency with a Child by Contact. After his release from prison in 2004, Young made his way to Florida.

Some three years later – in March of 2007 – Young provided registration information to officials in Jacksonville in order to comply with SORNA. But, on August 7, 2007, Young boarded a Greyhound bus and traveled to Texas. Law enforcement officers later arrested Young in Midland – on August 22, 2007; on December 27, 2007; and again on January 29, 2008. Young claims to have been working at a Cheddar's restaurant during his time back in Texas. At no point after traveling from Florida to Texas did Young update his SORNA information.

The United States Government charged Young in a superseding indictment under 18 U.S.C. § 2250(a) for violating the SORNA requirements.

---

[7]42 U.S.C. § 16913(d).

[8]72 Fed. Reg. 8894 (Feb. 28, 2007).

[9]See 28 C.F.R. § 72.3.

Young filed a motion to dismiss, based in part on his idea that SORNA provides for ex post facto punishment. The Magistrate Judge recommended denying Young's motion to dismiss, and the district court adopted the Magistrate Judge's recommendation. As a result, Young entered a conditional guilty plea, reserving the right to appeal the ex post facto ruling.

## II. ANALYSIS

The only issue on appeal is whether SORNA violates Young's right to be free from ex post facto punishment. This is a matter of first impression in this court.

### A. Standard of Review

The parties agree that Young did not object to the Magistrate Judge's report, so we would normally follow our rule from Douglass v. United States Automobile Ass'n and review any claim on appeal for plain error.[10] However – as the Government responsibly points out – the Magistrate Judge did not warn Young of the consequences of failing to object. Young therefore did not have notice of the result of not objecting.[11] We thus proceed to review de novo Young's

---

[10]79 F.3d 1415, 1417 (5th Cir. 1996) (en banc) ("We hold that failure to object timely to a magistrate judge's report and recommendation bars a party, except upon grounds of plain error . . . from attacking on appeal not only the proposed factual findings, but also the proposed legal conclusions, accepted . . . by the district court provided that the party has been served with notice that such consequences will result from a failure to object . . . .").

[11]See id. Although it is clear that the Magistrate Judge did not furnish Young with the standard warning that he must object to the report or face plain error review, other portions

constitutional claim.[12]

## B. Ex Post Facto Punishment

The so-called Ex Post Facto Clause of the United States Constitution actually refers to two prohibitions – one against the Congress[13] and one against the states[14] – that forbid the government from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed;

---

of the record are fuzzy. Indeed, though Young's appellate counsel concedes that Young did not timely object to the Magistrate Judge's report, the Magistrate Judge at the plea colloquy seemed to take for granted that Young intended to appeal the ex post facto issue. The Magistrate Judge explained to Young: "Now, I will candidly tell you that there's not a lot of law in this realm. I think I mentioned that to you at the arraignment. I've got several of these cases right now, one where I found it should be dismissed, another one and your case where I found that it should not be dismissed. But I will tell you quite candidly we don't have a lot of law telling us exactly how we ought to apply this statute right now. So what I've explained to you is my best case knowledge of what's required of you right now under the law. Quite frankly, I'll be glad to, if your case goes up on appeal, get some law on the thing so we'll know what the obligations fully are under this statute." R. at 119-20. And later: "But I will note in the report to the district judge that your plea agreement specifically allows you to appeal the issue of whether or not you had an obligation to register under the Sex Offender Registration Act. I will make that very apparent on the face of it so that if there's any question it's in the plea agreement, it's also in my finding as well." R. at 126. We are thus faced with two alternative possible factual histories that – fortunately – lead to the same result: either Young did object to the report; or he did not object but the Magistrate Judge did not warn him of the consequences. Each possibility allows Young to avoid plain error review.

[12]C.f. Guillory v. PPG Indus., Inc., 434 F.3d 303, 308 (5th Cir. 2005) (explaining that, when the Douglass rule does not apply, "the standard of review depends upon the issue on appeal"); Meister v. Tex. Adjutant Gen.'s Dep't, 233 F.3d 332, 336 (5th Cir. 2000) (reviewing de novo a legal question when the Douglass rule did not apply).

[13]U.S. CONST., Art. I, § 9, cl. 3.

[14]U.S. CONST., Art. I, § 10, cl. 1.

or imposes additional punishment to that then prescribed . . . ."[15] Justice Chase, in the watershed case Calder v. Bull, described specifically the types of laws that violate the ex post facto prohibitions:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. . . .[16]

The Supreme Court has uniformly reaffirmed Justice Chase's definition as authoritative.[17]

Young's ex post facto argument is a bit unclear, but he seems to challenge SORNA in two ways: first, by suggesting that its sanctioning provision (18 U.S.C. § 2250) in some way punishes him retroactively; and, second, by suggesting that SORNA's registration provision increases the punishment for his

---

[15]Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1867).

[16]Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798) (opinion of Chase, J.).

[17]See Collins v. Youngblood, 497 U.S. 37, 41-42 (1990) (citing Justice Chase); id. at 42 ("So well accepted were [Justice Chase's] principles that the Court in Beazell v. Ohio . . . was able to confidently summarize the meaning of the Clause as follows: 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed is prohibited as ex post facto.'" (citations omitted)); id. at 43 ("The Beazell formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.").

2001 sex crime.[18]  That is, Young contends that either his incarceration under SORNA or the mere burden of having to register under SORNA violates the ex post facto prohibition of the Constitution.

### i. Sanctioning Provision under Title 18

The consequences under 18 U.S.C. § 2250 do not immediately jump out as after-the-fact types of punishment.  Indeed, for a penal law to be considered ex post facto, it "must apply to events occurring before its enactment."[19] Although SORNA does relate to old conduct that was criminal when done, the question is whether SORNA punishes this old conduct.  On its face, SORNA does not purport to punish sex offenders for their old crimes; instead, the government can only punish sex offenders for currently failing to register.  Specifically, SORNA's sanctioning provision contains two definitional requirements, a scienter, and one triggering act – punishing only: "sex offenders" (definition); who have "traveled in interstate . . . commerce" (definition); and "knowingly" (scienter); subsequently fail to update their SORNA registry information (the act).  Especially as applied to Young – who both traveled in interstate commerce and knowingly failed to update his registry only after the Attorney General had made SORNA's requirements applicable to all sex offenders – the forbidden act is not one which was legal at the time he committed it.  His incarceration itself thus

---

[18]Young also makes an abortive attempt to convince us that, as "a convicted sex offender," Young "is, arguably, a member of an 'unpopular group'" – and that Congress vindictively enacted SORNA.  Appellant's Br. at 10-11.  Accepting this as a contention that the act denied Young equal protection of the laws, it is meritless.

[19]Weaver v. Graham, 450 U.S. 24, 29 (1981) (citation omitted).

does not violate the Constitution's ex post facto prohibitions.[20]

### ii. Registration Requirements under Title 42

Because SORNA permits prosecution only of current acts, Young is left to argue that SORNA as a regulatory whole is an ex post facto punishment for his 2001 sex crime. That is, Young must contend that SORNA and its attendant registration burdens – isolated from the fact of his incarceration under SORNA – increase his punishment for his 2001 sex crime. Viewed in this way, the inconvenience and embarrassment of registering as a sex offender are punishments appended after the fact onto his 2001 prison sentence. Young's theory would be: If SORNA's registration requirements under Title 42 are unconstitutional, then the Government cannot punish him under Title 18 for failing to abide by them – and Young will go free.

The Supreme Court has provided us with the framework for determining whether "a sex offender registration law constitutes retroactive punishment forbidden by the Ex Post Facto Clause."[21] First, we must "ascertain whether the legislature meant the statute to establish 'civil' proceedings."[22] If the legislature intended with the registration requirements to impose punishment, then the law

---

[20]It is important to note that we express no opinion on so-called "gap" cases in which a sex offender traveled in interstate commerce or failed to update his or her registry after SORNA's execution (July 27, 2006) but before the Attorney General's retroactive application (February 28, 2007). No such issue is before the court.

[21]See Smith v. Doe, 538 U.S. 84, 92 (2003).

[22]Id. (citing Kansas v. Hendricks, 521 U.S. 346, 361 (1997)).

is automatically unconstitutional.[23]  On the other hand, if the legislature's "intention was to enact a regulatory scheme that is civil and nonpunitive," then the court must ask "whether the statutory scheme is so punitive either in purpose or effect as to negate [the government's] intention to deem it civil."[24] The court must defer to the legislature's stated intent – as "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."[25]

Turning to the statute at hand, we now hold – in line with all of our sister Circuits to have considered the issue[26] – that SORNA is a civil regulation and, thus, does not run afoul of the Constitution's ex post facto prohibitions.  With SORNA, Congress expressly sought to "establish[] a comprehensive national system for the registration of [sex] offenders"[27] in order "to protect the public from sex offenders and offenders against children."[28]  This express language indicates that Congress sought to create a civil remedy.[29]  Therefore, Young must

---

[23]See id.

[24]Id. (citations and internal quotations omitted).

[25]Id. (citations and internal quotations omitted).

[26]See United States v. Gould, 568 F.3d 459, 466 (4th Cir. 2009); United States v. Samuels, 319 F. App'x 389, 395 (6th Cir. 2009) (unpublished); United States v. May, 535 F.3d 912, 919-20 (8th Cir. 2008); United States v. George, 2009 U.S. App. LEXIS 19051, 13-16 (9th Cir. 2009); United States v. Hinckley, 550 F.3d 926, 935-38 (10th Cir. 2008); United States v. Lawrance, 548 F.3d 1329, 1332-36 (10th Cir. 2008); United States v. Ambert, 561 F.3d 1202, 1208 (11th Cir. 2009).

[27]42 U.S.C. § 16901.

[28]42 U.S.C. § 16901.

[29]Although the goal of protecting the public might also be consistent with the purposes of criminal justice, the government's "pursuit of it in a regulatory scheme does not make the

present the "clearest proof" that either the purpose or the effect of the regulation is in fact so punitive as to negate its civil intent. This he cannot do.

### a. Punitive Purpose

In an attempt to show implicit punitive purpose, Young lists a half-dozen ways in which SORNA is supposedly different from the Alaska Sex Offender Registration Act (ASORA) upheld in Smith v. Doe.[30] However, Young is analytically mistaken. First, Young argues that SORNA broadens the types of sex offenders subject to registration; second, Young argues that SORNA creates classes of offenders. It is hard to see how either of these characteristics even tends to reveal punitive purpose. To the contrary, specification and comprehensiveness are hallmarks of civil regulation.

Third, Young claims that SORNA lengthens the duration of registration, and, fourth, that SORNA reduces the time frame for the sex offender to update his registry. Both of these claims are factually false: certain Alaskan offenders must register for life;[31] and under ASORA a sex offender has only one business day to register after "becoming physically present" in Alaska.[32]

Fifth, Young argues that SORNA imposes harsh penalties for violations of its regulations, and, sixth, that Congress codified the sanctions component of

---

objective punitive." Smith, 538 U.S. at 94.

[30]See ALASKA STAT. § 12.63.010 (2000). The Court in Smith reviewed the year 2000 version of the Alaskan statute. See Smith, 538 U.S. at 90.

[31]See ALASKA STAT. § 12.63.010(d)(2) (2000).

[32]See ALASKA STAT. § 12.63.010(a)(3) (2000).

SORNA under Title 18 – a criminal portion of the United States Code. Young is confusing the issue by suggesting that the penalties under Title 18 reveal an obfuscated punitive intent in the registration requirements of Title 42. Indeed, although the Adam Walsh Act contained both the registration and the remedial provisions, it is at least useful to think of them as conceptually separate. Title 42 imposes the burden of registration on previous sex offenders – and at least plausibly might be considered ex post facto. SORNA's Title 18 provisions, on the other hand, can punish Young only for current conduct – foreclosing any ex post facto claim. And, in any event, the Supreme Court rejected both of these arguments in Smith.

The Court held that "partial codification of the Act in the . . . criminal procedure code is not sufficient to support a conclusion that the legislative intent was punitive."[33] Then the Court noted that the Alaskan "scheme is enforced by criminal penalties."[34] Indeed, a violation of the Alaskan registration statute subjects offenders to punishment as a class C felon[35] – which can lead to five years in prison.[36] The maximum length of incarceration under SORNA – 10 years – is not so high as to make it of a different kind than that of the Alaskan statute.

## b. Punitive Effect

---

[33]Smith, 538 U.S. at 95.

[34]Id. at 96. See ALASKA STAT. § 11.56.835 (2000).

[35]See ALASKA STAT. § 11.56.835(d) (2000).

[36]See ALASKA STAT. § 11.56.835(e) (2009). The five-year statutory maximum has not changed since Smith.

Young makes no effort to prove that the effect of SORNA is so punitive as to make it not a civil scheme, and any attempt to do so would have been futile. The Supreme Court explained in Smith that a court is to look to the factors listed in Kennedy v. Mendoza-Martinez[37] when analyzing whether the effects of a purportedly civil act are in fact overly punitive.[38] For sex registration statutes, the "factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."[39] After analyzing the Alaskan statute under these factors, the Supreme Court in Smith concluded that the act was not punitive in effect – and that it was not even a close call.[40] Upon review, there is no reason for us to come to a different conclusion with SORNA – particularly without any prompting from Young.

## III. CONCLUSION

We reject Young's challenge to SORNA under the ex post facto prohibitions of the Constitution. AFFIRMED.

---

[37]372 U.S. 144, 168-69 (1963).

[38]Smith, 538 U.S. at 97.

[39]Id.

[40]See id. at 105-06.