**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————

09-50204

———————

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

FRANCISCO TORRES,

Defendant - Appellant

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

Before DAVIS, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

This appeal involves a single issue regarding the federal Sex Offender Registration and Notification Act of 2006 ("SORNA"). SORNA requires sex offenders to register with state-run sex-offender registries and to keep their registrations current. However, persons who were convicted of sex offenses before SORNA's enactment on July 27, 2006 ("pre-enactment sex offenders") are only required to comply with the statute's registration requirements if and when the Attorney General so specifies in a "valid" regulation. *See Reynolds v. United States*, 132 S. Ct. 975, 979, 984 (2012) (construing 42 U.S.C. § 16913(a), (d)). The single question in this case is whether the Attorney General's "interim rule" of February 28, 2007, which required pre-enactment

No. 09-50204

sex offenders to comply with SORNA, was such a "valid" promulgation. For the reasons that follow, the answer, which is controlled in this circuit by *United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011), is yes, at least with respect to the defendant here, Francisco Torres. We therefore affirm his conviction.

In 1999, Torres was convicted under the Uniform Code of Military Justice of violating Article 120, sodomy of a child under 12 years old, and Article 134, indecency with a child under 16 years old. In the initial years following his conviction, he registered as required under then-existing sex-offender-registration laws. On July 27, 2006, SORNA was enacted into law. From that date, July 27, 2006, until May 7, 2008, Torres failed to update his registration to reflect several changes in employment as required under SORNA. On June 11, 2008, he was charged with failing to update his registration under 18 U.S.C. § 2250(a), which provides in relevant part that, "Whoever—[1] is required to register under [SORNA]; [2] is a sex offender as defined for purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice); . . . and [3] knowingly fails to register or update a registration as required by [SORNA]; shall be fined under this title or imprisoned not more than 10 years, or both." After the district court rejected several legal challenges to the charges, Torres and the government stipulated to his failure to update his registration between July 27, 2006 and May 7, 2008. Following a bench trial, Torres was found guilty.

On appeal, Torres' argument proceeds in two steps.[1] First, Torres contends that the period in which he did not update his registration to reflect changes in employment—July 27, 2006 to May 7, 2008—occurred before the

---

[1] The government contends that this argument was not sufficiently presented to the district court to preserve it for appeal and, therefore, the plain-error rule is invoked. *See* Fed. R. Crim. P. 52(b). However, because Torres' argument fails under any standard of review, we need not determine whether the plain-error rule is applicable here.

effective date that SORNA began to apply to pre-enactment sex offenders such as himself under the terms of the statute. In other words, he argues that, during the time he committed his conduct of conviction, the statute did not yet prohibit such conduct. Second, Torres contends that since his conduct occurred before the effective date of the statute, his conviction violates the Ex Post Facto Clause. *See* U.S. Const. art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed.").[2] The first question then is when SORNA began applying to pre-enactment sex offenders such as Torres and whether such date was indeed, as Torres argues, after May 7, 2008, when his conduct (that is, his failure to update his registration) concluded.

In *Reynolds v. United States*, the Supreme Court held that two provisions of SORNA—one that imposes the duty on sex offenders to register and keep the registration current,[3] and another that authorizes the Attorney General to specify the applicability of SORNA's requirements to pre-enactment sex offenders[4]—should be read together so as to provide that pre-enactment sex offenders are not required by SORNA to register and update their registrations unless and until the Attorney General so specifies in a "valid rule." 132 S. Ct. at 979, 984. Thus, under *Reynolds*, the question of when SORNA began to apply to pre-enactment sex offenders turns on whether and when the Attorney General promulgated a "valid rule" specifying such application.

---

[2] To be clear, Torres does not make the sort of ex-post-facto argument that was asserted and rejected in *United States v. Young*, 585 F.3d 199 (5th Cir. 2009). In *Young*, this court rejected the argument that, in short, SORNA's registration regime as applied to persons who committed sex offenses before SORNA's enactment operated to increase the punishment for those sex offenses after they had already been committed. Torres does not make that argument here. Rather, his argument is that, as a matter of statutory law, SORNA did not apply to him at the time he committed his conduct of conviction. Therefore, he argues, his conviction violates the Ex Post Facto Clause. *Young* did not address this argument. *See Young*, 585 F.3d at 204 n.20.

[3] 42 U.S.C. § 16913(a).

[4] *Id.* § 16913(d).

No. 09-50204

There are several possible instances when the Attorney General could have validly specified that pre-enactment sex offenders are required to register under SORNA, but only one of those instances was prior to the conclusion of Torres' conduct of conviction, that is, before May 7, 2008.  On February 28, 2007, the Attorney General issued the "interim rule" that is at issue in this appeal.  With unambiguous language, the interim rule decreed that SORNA's registration requirements "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]."  *See* 72 Fed. Reg. 8894, 8897 (codified at 28 C.F.R. § 72.3).  The question is whether that rule was a "valid" promulgation.[5]

The circuit courts are divided on whether the interim rule of February 28, 2007 is valid.  *Compare United States v. Reynolds*, 710 F.3d 498, 524 (3d Cir. 2013) (invalid), *United States v. Cain*, 583 F.3d 408, 419-20 (6th Cir. 2009) (same), *and United States v. Valverde,* 628 F.3d 1159, 1166-69 (9th Cir. 2010) (same), *with United States v. Gould*, 568 F.3d 459, 470 (4th Cir. 2009) (valid), *and United States v. Dean*, 604 F.3d 1275, 1282 (11th Cir. 2010) (same).  Here, Torres offers only a single argument for the interim rule's invalidity.  That is, he says that this court has already held in *United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011), that the interim rule is invalid.  This argument is incorrect and, in fact, backward.

In *Johnson*, this court addressed the claim that, in promulgating the interim rule, the Attorney General wrongfully failed to adhere to two requirements of the Administrative Procedure Act ("APA").  *Id.* at 921.  "Under

---

[5] The next instance in which the Attorney General could have validly required pre-enactment sex offenders to register under SORNA would have been July 2, 2008, when the Attorney General issued "final guidelines."  *See* 73 Fed. Reg. 38,030, 38,046.  Because the final guidelines were not issued until after Torres' conduct of conviction, they are not at issue here.

the APA, agencies issuing rules must publish notice of proposed rulemaking in the *Federal Register* and 'shall give interested persons an opportunity to participate in the rule making' by allowing submission of comments." *Id.* at 927 (citing 5 U.S.C. § 553(b), (c)). "In addition, the APA requires that publication of a substantive rule 'shall be made not less than 30 days before its effective date.'" *Id.* (citing 5 U.S.C. § 553(d)). However, "both of these requirements may be bypassed if 'good cause' exists." *Id.* (citing 5 U.S.C. § 553(b)). The issue in *Johnson* was whether the Attorney General had "good cause" to forgo the APA's requirements. *Johnson* held that he did not. *Id.* at 930. However, *Johnson* did not end its analysis upon finding that the Attorney General had violated the APA, because "[t]he APA demands that courts reviewing agency decisions under the Act '[take] due account . . . of the rule of prejudicial error.'" *Id.* at 930 (citing 5 U.S.C. § 706). "In administrative law, as in federal civil and criminal litigation, there is a harmless error rule." *Id.* (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 659-60 (2007)). *Johnson* ultimately concluded "that the Attorney General's APA violations were harmless error." *Id.* at 933.

In holding that the APA violations were harmless, *Johnson rejected* the argument that the interim rule was invalid by dint of the APA violations (insofar as the rule applied to the defendant in that case, that is). Indeed, in so holding, *Johnson* cited the concurrence to the Eleventh Circuit's decision in *United States v. Dean*, 604 F.3d 1275 (11th Cir. 2010), which concluded that the court should "*uphold* the Attorney General's interim rule." *Id.* at 1289 (Wilson, J., concurring) (emphasis added). If *Johnson* did not intend to hold that the interim rule was valid and had the force of law, it is not apparent what else the court could have meant in the harmless error discussion. If *Johnson had* struck down the interim rule (as Torres believes to have been the case), it would mean that the court in *Johnson* went on to affirm a criminal conviction

despite recognizing that the defendant's conduct of conviction did not fall within the ambit of the statute. *See Johnson*, 632 F.3d at 922 (construing SORNA to apply to pre-enactment sex offenders only if there has been a regulation with the force of law from the Attorney General providing such). Torres offers no explanation for how *Johnson* could have affirmed a conviction based on conduct that was not illegal, nor is any explanation apparent. In short, Torres misreads *Johnson*. *Johnson* did not invalidate the Attorney General's interim rule, but rather upheld it as applied to the defendant there, finding that the APA violations did not prejudice him.

The reasons that *Johnson* found the Attorney General's APA violations to be harmless to the defendant there apply with equal force to Torres. First, with respect to the requirement that regulations be published at least 30 days before their effective date, *Johnson* found the Attorney General's violation of that provision to be harmless because the conduct of the defendant in that case occurred more than 30 days after the interim rule's February 28, 2007, publication—*i.e.*, after March 30, 2007. *Id*. at 930. That is the case here too. Torres' conduct of conviction continued until May 7, 2008, long after March 30, 2007. Second, with respect to the requirement that interested persons be provided advanced notice of proposed rulemaking and afforded the opportunity to comment, *Johnson* found the violation of such to be harmless, reasoning essentially that, even though the rule was promulgated in the absence of a public comment period, the Attorney General considered and rejected arguments that were made against the rule and would have likely reached the same result regardless. *Id*. at 931-33. There is no reason to think that this aspect of *Johnson* does not control here. As in *Johnson*, here too, "[t]here is no suggestion that, if given the opportunity to comment, [Torres] would have presented an argument the Attorney General did not consider in issuing the interim rule." *Id*. at 932.

It could be argued that *Johnson* was wrongly decided,[6] but we must follow it until the Supreme Court, this court sitting en banc, or Congress says otherwise. *See Jacobs v. Nat'l Drug Intelligence Ctr.,* 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court."). *Johnson* upheld the interim rule insofar as it affected the defendant there, and, under *Johnson*, we must do the same here.

Torres argues that we should adopt that part of *Johnson* declaring APA violations but disregard that part of *Johnson* finding that the violations were harmless. We can do so, he says, because *Johnson* involved an "APA claim" while this case, given the citation to the Ex Post Facto Clause, involves a "constitutional claim." This argument is without merit. The question in both *Johnson* and under the claim that Torres attempts to assert here is whether SORNA reached the defendant's conduct of conviction at the time of that conduct, which in turn depends on whether the interim rule has the force of law or, on the contrary, is invalid. In both *Johnson* and here, only one argument for the interim rule's invalidity is offered—that the Attorney General ran afoul of the APA's requirements. Thus, the question in both cases is the same: whether the Attorney General's APA violations rendered the interim rule an invalid promulgation without the force of law.

Because, under this circuit's precedent, the interim rule is valid insofar as it affects Torres, and that rule required Torres, as a pre-enactment sex offender, to update his sex-offender registration under SORNA, it follows that Torres' failure to do such violated SORNA. Torres' argument under the Ex

---

[6] *See United States v. Reynolds*, 710 F.3d 498, 521-23 (3d Cir. 2013).

No. 09-50204

Post Facto Clause that his conduct of conviction occurred before the effective date that SORNA became applicable to him is without merit. *Johnson* compels us to conclude that SORNA became effective as to Torres on February 28, 2007, the date that the Attorney General issued his interim rule specifying SORNA's applicability to pre-enactment sex offenders, and Torres' failure to update his registration continued until after that date.[7]

AFFIRMED.

---

[7] Torres also asserts claims that he concedes are foreclosed under this court's decisions in *United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009), and *United States v. Heth*, 596 F.3d 255 (5th Cir. 2010). We agree that these claims are foreclosed and thus address them no further.