No. 119,796

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

N.R.,
*Appellant*.

SYLLABUS BY THE COURT

1.

We presume statutes are constitutional and resolve all doubts in favor of a statute's validity.

2.

Lifetime registration for juvenile sex offenders mandated by the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., does not constitute punishment for purposes of applying provisions of the United States Constitution.

3.

Lifetime registration for juvenile sex offenders mandated by the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., does not constitute punishment for purposes of applying section 9 of the Kansas Constitution Bill of Rights.

4.

Lifetime registration for juvenile sex offenders mandated by the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., is not part of a juvenile offender's sentence.

5.

To determine whether a legislature's statutory scheme is punitive as applied to a juvenile offender we use the "intent-effects" test adopted in *State v. Petersen-Beard*, 304 Kan. 192, 194-95, 377 P.3d 1127 (2016).

6.

The Kansas Offender Registration Act, K.S.A. 22-4901 et seq., itself, rather than a court order, imposes the duty to register upon sex offenders.

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed September 27, 2019. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GARDNER, J., and LAHEY, S.J.

GARDNER, J.: N.R. appeals his conviction of failing to register as a sex offender. He argues that the district court erred in denying his motion to dismiss, which argued that imposition of lifetime postrelease registration under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., is unconstitutional as applied to a 14-year-old juvenile offender. N.R. also argues that his sentence is illegal because the registration requirement was improperly imposed by a magistrate court instead of by a district court. But we find that the registration requirement is not punishment as to a juvenile and is not part of a juvenile offender's sentence, so it does not violate the constitutional provisions N.R. raises. And the relevant statutes impose on the defendant a duty to register, making any lack of a magistrate court's authority to do so immaterial. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, N.R., then 14 years old, pleaded guilty to rape and was adjudicated a juvenile offender. As a result of his plea, the magistrate court granted N.R. probation with an underlying sentence of 24 months in a correctional facility. The magistrate court also ordered N.R. to register as a sex offender, without stating how long N.R. had to do so.

N.R. understood that he had to register for a period of five years from the date of adjudication. See K.S.A. 2006 Supp. 22-4906(h)(1) (requiring registration for five years under certain circumstances). But in 2011, before the five-year registration period expired, the Legislature amended the statute to require lifetime registration for some juvenile offenders based on age and the severity of the offense:

> "[An] offender 14 years of age or more who is adjudicated as a juvenile offender for an act which if committed by an adult would constitute a sexually violent crime set forth in subsection (c) of K.S.A. 22-4902, and amendments thereto, and such crime is an off-grid felony or a felony ranked in severity level 1 of the nondrug grid as provided in K.S.A. 21-4704, prior to its repeal, or section 285 of chapter 136 of the 2010 Session Laws of Kansas, and amendments thereto, shall be required to register for such offender's lifetime." L. 2011, ch. 95, § 6(h).

N.R. was adjudicated of committing rape, a severity level 1 offense if committed by an adult. See K.S.A. 2005 Supp. 21-3502(a)(2), (c). So the amended registration statute, as applied to N.R., required lifetime registration.

N.R. admits knowing that registration has always been a requirement of his release, and N.R. has registered as an offender from his adjudication until the present, except for a few instances. In 2012, N.R. was convicted of failing to register. Then in 2017, N.R. was charged with two counts of failing to register.

Before trial on those two counts, N.R. moved to dismiss, the denial of which he now appeals. He argued that the lifetime registration requirement:

- Violated the cruel and unusual punishment provision of the Eighth Amendment of the United States Constitution;
- violated the cruel or unusual punishment provision of section 9 of the Kansas Bill of Rights;
- violated the Ex Post Facto Clause of the United States Constitution; and
- was an illegal sentence imposed by a magistrate judge without authority to impose registration.

The district court held a hearing on N.R.'s motion and then denied it based on its duty to follow our Supreme Court's precedent about lifetime registrations requirements.

N.R. then tried his case to the bench based on stipulated facts. Those relevant facts are:

"3. Defendant renews his objections and arguments regarding cruel and unusual punishment, ex post facto, and illegal sentence raised by written motion and in the motion hearing held February 9, 2018. The court denied the motion. The Defendant specifically reserves his right to appeal the Court's denial of the motion to dismiss in this matter.

"4. The investigating officers in this case would testify consistently with their prior testimony at the preliminary hearing held November 27, 2017, and said testimony is hereby incorporated by reference. A summary of the evidence as it would be presented by the investigating officers and witnesses in this case is as follows:

"a. [N.R.] is required to register as a sex offender based on an adjudication for Rape, Sexual Intercourse with a Child < 14 YOA in Saline County, KS case # 2006 JV 238. (See attached Exhibit 1, which is hereby incorporated herein by reference as being accurate.).

"b. [N.R.] is required to register four times each year with the months of registration determined by his birth month of December; making his registration

4

months March, June, September and December. [N.R.] registered June 30, 2016 listing his address as 100 E. 2nd, Apt. 9, Hutchinson, Reno County, Kansas. That address is managed by New Beginnings Inc. (New Beginnings).

"c. On August 11, 2016, New Beginnings terminated [N.R.'s] stay and he no longer resided at 100 E. 2nd, Apt. 9, Hutchinson, Reno County, Kansas. Brenda Heim of New Beginnings based the termination on no income, no permanent housing, and refusal to comply with the requirements of the program. (See attached Exhibit 2, which is hereby incorporated herein by reference as being accurate.).

"d. [N.R.] failed to report his change of residence by August 15, 2016, within three days, contrary to the requirements of his registration under K.S.A. 22-4905(g). [N.R.] had acknowledged he understood this requirement of registration by initialing #7 on his Kansas Offender Registration Form. (See attached Exhibit 3, which is hereby incorporated herein by reference as being accurate.).

"e. [N.R.] failed to report for registration between September 1 and September 30, 2016, his normal month of registration, contrary to the requirements of his registration under K.S.A. 22-4905(b). [N.R.] had acknowledged he understood this requirement of registration by initialing #5 on his Kansas Offender Registration Form. (See attached Exhibit 3, which is hereby incorporated herein by reference as being accurate.).

f. [N.R.] acknowledged he was required to register as an offender in Reno County, Kansas when he filled out Kansas Offender Registration Form with a Reno County address, 100 E. 2nd, Apt. 9, Hutchinson, Reno County, Kansas. (See attached Exhibit 3, which is hereby incorporated herein by reference as being accurate.).

"g. [N.R.] has a prior conviction for failure to register as a sex offender in Reno County case # 2012 CR 549. (See attached Exhibit 4, which is hereby incorporated herein by reference as being accurate.)."

The four exhibits referenced and incorporated in the stipulation are:  (1) the original and amended juvenile offender complaints against N.R. and the related journal entries; (2) a document showing the termination of N.R.'s stay at New Beginnings; (3) a 2016 Kansas

5

offender registration form; and (4) a 2012 journal entry of conviction for N.R.'s failure to register as a sex offender.

After considering the evidence, the district court found N.R. guilty of failing to register on both counts. It sentenced N.R. to a controlling 49 months in prison but granted a dispositional departure to community corrections for 36 months. N.R. appeals the district court's denial of his motion to dismiss, reprising the arguments he made below.

I.      THE DISTRICT COURT DID NOT ERR IN FINDING THE REGISTRATION REQUIREMENT CONSTITUTIONAL, AS APPLIED TO JUVENILES.

We first address N.R.'s argument that KORA's requirement of lifetime registration as a sex offender is unconstitutional as applied to juveniles. The State rejects N.R.'s as-applied constitutional arguments because the lifetime registration requirement is neither punishment nor part of N.R.'s criminal sentence.

Determining a statute's constitutionality is a question of law subject to our unlimited review. We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016). We must interpret a statute in a way that makes it constitutional if any reasonable construction exists that would maintain the Legislature's apparent intent.

This court is duty bound to follow our Supreme Court precedent, absent some indication it is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Our Supreme Court has recently found that "[t]he legislature intended KORA to be civil and nonpunitive for all classes of offenders currently subject to its provisions." *State v. Huey*, 306 Kan. 1005, 1009, 399 P.3d 211 (2017), *cert. denied* 138 S. Ct. 2673 (2018).

6

Kansas courts have repeatedly held that offender registration under KORA is not punishment. See, e.g., *Petersen-Beard*, 304 Kan. at 209 (finding that lifetime registration as a sex offender under KORA is not punishment for either Eighth Amendment or § 9 purposes); *State v. Rocheleau*, 307 Kan. 761, Syl. ¶ 4, 415 P.3d 422 (2018); *State v. Watkins*, 306 Kan. 1093, 1095, 401 P.3d 607 (2017); *Huey*, 306 Kan. at 1009-10. Because registration is not punishment, our Supreme Court has explicitly rejected the argument that KORA's lifetime registration requirement violates an offender's constitutional rights as they relate to cruel and unusual punishment or ex post facto provisions. See *State v. Reed*, 306 Kan. 899, 904, 399 P.3d 865 (2017) ("Registration pursuant to KORA for sex offenders is not punishment. Accordingly, retroactive application of the tolling provision to extend Reed's registration period could not violate the Ex Post Facto Clause."); *Petersen-Beard*, 304 Kan. at 209 ("Because we conclude the registration requirements Petersen-Beard complains of are not punishment, his claim that those requirements violate the Eighth Amendment's prohibition against cruel and unusual punishment cannot survive.").

Similarly, the Kansas Supreme Court has held that a registration requirement is not part of a defendant's criminal sentence. *Rocheleau*, 307 Kan. at 765; *State v. Marinelli*, 307 Kan. 768, 786, 415 P.3d 405 (2018). As *Marinelli* noted:

> "[W]ithin KORA, there are statutory provisions that argue against considering registration to be part of a criminal sentence. For example, if an individual is convicted of a qualifying crime, but remains free on bond pending sentencing, that individual is immediately obliged upon conviction to register within three days. See K.S.A. 2017 Supp. 22-4904(a)(1)(B). And failing to do so could cause that individual to be charged with a new crime for not registering—even before sentencing for the underlying conviction." 307 Kan. at 786.

N.R. acknowledges these adverse rulings. Yet he asserts that they do not apply here because they considered only adult criminals, and, as the United States Supreme

7

Court has held, juveniles are different than adults. N.R. cites several federal cases that highlight the diminished culpability of juveniles and require a heightened scrutiny by the sentencing court when considering that diminished culpability. For example, *Miller v. Alabama*, 567 U.S. 460, 489, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), outlawed the mandatory imposition of life without parole sentences for juveniles convicted of homicide. *Miller* was the third in a line of cases in which the United States Supreme Court held that "children are constitutionally different from adults for purposes of sentencing." 567 U.S. at 471; see *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (finding Eighth Amendment prohibits imposition of life without parole sentence on juvenile offender who did not commit homicide); *Roper v. Simmons*, 543 U.S. 551, 578-79, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (holding imposition of the death penalty on offenders who were under age 18 when they committed their capital crimes was prohibited by the Eighth and Fourteenth Amendments).

*Roper* explained why the law does not usually equate the failings of a minor with those of an adult:

> "The susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.' Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. [Citations omitted.]" 543 U.S. at 570.

We have no quarrel with that general rationale. Those cases, however, dealt with the imposition of states' "harshest possible penalt[ies]"—execution and imprisonment for life without parole. 567 U.S. at 479. N.R. cites no authority for his assertion that a lifetime registration requirement is one of Kansas' harshest possible penalties. Because KORA's registration requirement is not punishment, those federal cases are unpersuasive.

The federal cases more on point examine the constitutionality of sex offender registration requirements, generally, and as applied to juveniles. In *Smith v. Doe*, the United States Supreme Court held that Alaska's sex offender registration statute established a civil regulatory scheme and did not impose punishment, and thus did not violate the Ex Post Facto Clause. 538 U.S. 84, 105-06, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Like the Alaska statute upheld by the Supreme Court, the Kansas statute imposes a civil regulatory regime rather than punishment. See *Petersen-Beard*, 304 Kan. at 195-97. KORA requires various categories of sex offenders to provide personal information to the state and to keep that information updated and requires the state to publish that information. Such a scheme does not implicate the Ex Post Facto Clause or the Cruel and Unusual Punishment Clause because it is civil and regulatory in nature.

Cases applying KORA's federal counterpart, the Sex Offender Registration and Notification Act (SORNA), do not help N.R. Congress chose to extend SORNA to certain juveniles—those 14 years or older at the time of their offense where "the offense adjudicated was comparable to or more severe than aggravated sexual abuse" under 18 U.S.C. § 2241 (2012). 34 U.S.C. § 20911(8) (2017 Supp.). And SORNA may require juveniles who fit the criteria to register as sex offenders for life. 34 U.S.C. § 20915(a) (2017 Supp.).

Yet federal circuits have held that SORNA is not punishment. As the Kansas Supreme Court noted in *Petersen-Beard*, 304 Kan. at 197, the Fourth Circuit has held that SORNA is not punishment as applied to a juvenile. See *United States v. Under Seal*, 709

9

F.3d 257, 265 (4th Cir. 2013); see also *United States v. Young*, 585 F.3d 199, 204-05 (5th Cir. 2009) (SORNA's express language shows that Congress sought to create a civil remedy, so the defendant must show that either the purpose or the effect of the regulation is in fact so punitive as to negate its civil intent. "This he cannot do."); *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) ("SORNA's registration requirement demonstrates no congressional intent to punish sex offenders."), *abrogated on other grounds by Reynolds v. United States*, 565 U.S. 432, 132 S. Ct. 975, 181 L. Ed. 2d 935 (2012). But see *Piasecki v. Court Common Pleas, Bucks Cnty, PA*, 917 F.3d 161, 172-73 (3d Cir. 2019) (finding sex offender registration requirements restrictive enough to constitute custody for habeas corpus "custody" requirement and were part of petitioner's sentence).

Even the Ninth Circuit has rejected the claim that SORNA's registration requirement, as applied to juveniles, violates the Eighth Amendment's prohibition against cruel and unusual punishment. In *United States v. Juvenile Male*, 670 F.3d 999, 1002 (9th Cir. 2012), the Ninth Circuit found the registration requirement, even if humiliating, failed to meet the high bar for cruel and unusual punishment claims:

> "Although defendants understandably note that SORNA may have the effect of exposing juvenile defendants and their families to potential shame and humiliation for acts committed while still an adolescent, the statute does not meet the high standard of cruel and unusual punishment. The requirement that juveniles register in a sex offender database for at least 25 years because they committed the equivalent of aggravated sexual abuse is not a disproportionate punishment. These juveniles do not face any risk of incarceration or threat of physical harm. In fact, at least two other circuits have held that SORNA's registration requirement is not even a punitive measure, let alone cruel and unusual punishment. See *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) ("SORNA's registration requirement demonstrates no congressional intent to punish sex offenders'); see also *United States v. Young*, 585 F.3d 199, 204-05 (5th Cir. 2009)." 670 F.3d at 1010.

N.R. has shown no support in federal law for his position.

As for Kansas law, N.R. relies on *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015), in arguing that his age at the time of his offense must be considered before he can be required to register for a lifetime. In *Dull*, our Supreme Court acknowledged the diminished culpability of juveniles as compared to adult offenders and held that the mandatory imposition of lifetime postrelease supervision for a juvenile convicted of aggravated indecent liberties with a child was cruel and unusual punishment. 302 Kan. at 60-61. But *Dull* is distinguishable because under Kansas law, postrelease supervision is punishment and is part of an offender's sentence. See *State v. Gaudina*, 284 Kan. 354, 358, 160 P.3d 854 (2007). The registration requirement, however, is not punishment and is not part of an offender's sentence.

And *Dull* applied a two-pronged analysis from *Graham* to consider whether punishment is cruel and unusual under the Eighth Amendment. That test requires a court to consider the culpability of the offenders in light of their crimes and characteristics, including age:

> "'The Court first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.' *Graham*, 560 U.S. at 61.
>
> . . . .
>
> "'" . . . The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question. [Citations omitted.] In this inquiry the Court also considers whether the challenged sentencing practice serves legitimate

11

penological goals. [Citations omitted.]"' *Mossman,* 294 Kan. at 929 (quoting *Graham,* 560 U.S. at 67)." *Dull*, 302 Kan. at 45, 51.

But the test that *Dull* used for determining whether punishment is cruel and unusual is not the proper test to use in analyzing whether a legislature's statutory scheme is punitive. See *Petersen-Beard*, 304 Kan. at 194-95. So *Dull* is neither controlling nor persuasive here.

N.R. generally argues that the effect of the lifetime registration requirement on him has been punitive. To show the burden that KORA's registration requirement has placed on him, N.R. relies on two affidavits his attorney reviewed during the hearing on his motion to dismiss—one from N.R. and one from his fiancée. But N.R. never moved to admit these affidavits, either at the hearing on his motion to dismiss or at trial, so the district court never admitted them as evidence. Although N.R. has included the affidavits in the record on appeal, we cannot consider evidence not admitted at trial. See *In re Estate of Watson*, 21 Kan. App. 2d 133, 137, 896 P.2d 401 (1995) (citing *Eisenhut v. Steadman*, 13 Kan. App. 2d 220, 767 P.2d 293 [1989]). And the record includes no testimony by N.R., or his fiancée, or anyone else about any hardships KORA's registration requirement imposes. Thus we have no evidence of any hardships N.R. suffered because of the registration requirement.

N.R. also argues, perhaps to meet part of the *Dull* test, that imposing a lifetime registration requirement on a juvenile contradicts the goals and policies of the Kansas Juvenile Justice Code. Those goals remain substantially unchanged since N.R.'s adjudication:

> "The primary goals of the juvenile justice code are to promote public safety, hold juvenile offenders accountable for their behavior and improve their ability to live more productively and responsibly in the community." K.S.A. 2018 Supp. 38-2301.

12

Our court emphasized the importance of the first goal in a similar case involving offender registration. *In re A.R.M.*, No. 95,870, 2007 WL 959621, at *5 (Kan. App. 2007) (unpublished opinion). There, as here, the juvenile defendant argued that KORA's requirement that juveniles register as sex offenders constitutes cruel or unusual punishment in violation of both the Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights. There, as here, the defendant relied on *Roper* in claiming that the inherent differences between adults and juveniles render application of KORA to juveniles cruel and unusual punishment. Yet we rejected the claim that KORA is unconstitutional as it applies to juveniles. As we explained, the public safety concern connected to sexual offense cases is a high priority and one that is met, at least in part, by registration requirements. See 2007 WL 959621, at *4-5.

As for the second goal, N.R. acknowledges that the registration requirement has held him accountable for his behavior, but he claims the burdens of registration are disproportionate to its benefits. N.R. attacks the third goal by alleging that the registration requirement has burdened, instead of improved, his ability to live more productively and responsibly in the community. But again he relies on the unadmitted affidavits, which we cannot do.

N.R.'s assertion that the registration requirement contradicts the goals or policies of the Kansas Juvenile Justice Code is thus unsupported by evidence. But even if N.R.'s assertions were backed by evidence, that would not matter. KORA's registration requirement is not part of the juvenile justice code, so N.R.'s showing that the registration requirement fails to meet the primary goals of the juvenile justice code would do nothing to show that the requirement is punishment.

N.R. has shown no reason why registration, which is not punishment for adults, should be considered punishment for juveniles. Our Supreme Court clarified in *Petersen-*

13

*Beard* the proper test for analyzing whether a legislature's statutory scheme is punitive. Yet N.R. makes no attempt to apply that test, which we summarize below.

*Petersen-Beard* adopted the two-part framework set out in *Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Under that "intent-effects" test:

> "'We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361 [117 S. Ct. 2072, 138 L. Ed. 2d 501] (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid*. (quoting *United States v. Ward*, 448 U.S. 242, 248-249 [100 S. Ct. 2636, 65 L. Ed. 2d 742] (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks*, supra, at 361 [117 S. Ct. 2072], "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," [citations omitted].'" *Petersen-Beard*, 304 Kan. at 194-95.

The Kansas Supreme Court held in *Thompson* that our Legislature intended the lifetime registration provisions of KORA to be a nonpunitive and civil regulatory scheme rather than punishment. See *Doe v. Thompson*, 304 Kan. 291, 316-17, 373 P.3d 750 (2016), *overruled on other grounds by Petersen-Beard*, 304 Kan. 192; *Petersen-Beard*, 304 Kan. at 195. Because the Legislature did not intend for KORA's lifetime sex offender registration scheme to be punishment, N.R. bears the burden to show by "'the clearest proof'" its effects "'override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" *Smith*, 538 U.S. at 92; see *Petersen-Beard*, 304 Kan. at 195.

To decide whether the effects of the legislative enactment negate and override the Legislature's intent to establish a civil regulatory scheme, we use the seven factors

14

identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). *Petersen-Beard*, 304 Kan. at 195. Those factors are:

1. whether the sanction involves an affirmative disability or restraint;

2. whether it has historically been regarded as a punishment;

3. whether it comes into play only on a finding of scienter;

4. whether its operation will promote the traditional aims of punishment— retribution and deterrence;

5. whether the behavior to which it applies is already a crime;

6. whether an alternative purpose to which it may rationally be connected is assignable for it; and

7. whether it appears excessive in relation to the alternative purpose assigned.

*Mendoza-Martinez*, 372 U.S. at 168-69; *Petersen-Beard*, 304 Kan. at 195. The Kansas Supreme Court analyzed these factors in detail in explaining why KORA is nonpunitive. See *Petersen-Beard*, 304 Kan. 204-209.

N.R. mentions a few of these factors in a conclusory way, yet he makes no attempt to show why his status as a juvenile warrants a different result as to any factor. As a result, N.R. has shown no reason for us to believe that the outcome of *Petersen-Beard* or other controlling precedent would have been any different had it involved a juvenile instead of an adult.

We conclude that the district court properly denied N.R.'s motion to dismiss. Because the registration requirement is not punishment and is not part of his sentence, N.R. can show no violation of the cruel or unusual punishment provision of the Eighth Amendment to the United States Constitution, of section 9 of the Kansas Constitution Bill of Rights, or of the Ex Post Facto Clause of the United States Constitution.

II.    N.R.'S SENTENCE WAS LEGAL, AND HIS REGISTRATION REQUIREMENT WAS PROPERLY ORDERED BY A MAGISTRATE JUDGE.

We next consider N.R.'s argument that the magistrate judge lacked authority to order him to register, so his sentence is illegal. N.R. contends that by statute, magistrate judges are limited to deciding matters defined in the juvenile justice code, and the registration requirement is not in the juvenile justice code but only in the criminal code. The State counters that any lack of magistrate authority is immaterial because sex offenders must register under K.S.A. 2018 Supp. 22-4902(b) regardless of which court orders it.

N.R. was originally sentenced by a magistrate judge, who also required N.R. to register as a sex offender. Under K.S.A. 2018 Supp. 20-302b(a)(6), a magistrate judge may hear "any action pursuant to . . . the revised Kansas juvenile justice code." Under the revised code, "[i]f the court finds that the juvenile committed the offense charged . . . the court shall adjudicate the juvenile to be a juvenile offender and may issue a sentence as authorized by this code." K.S.A. 2018 Supp. 38-2356(b). N.R. is correct that this statute, as relevant here, limits magistrate judges to deciding matters defined in the juvenile justice code and to issuing sentences authorized by the juvenile justice code. He is also correct that the registration requirement appears in the criminal procedure code, not in the juvenile justice code. See K.S.A. 2018 Supp. 22-4906(h).

The registration requirement is not, however, part of a criminal defendant's sentence. *Rocheleau*, 307 Kan. at 765; *Marinelli*, 307 Kan. at 786. KORA imposes the duty to register on the offender, not a court's order, as the Kansas Supreme Court has recently clarified:

16

"We have established that a person's status as an 'offender' might turn on a court determination, but the Act itself imposes the duty to register upon any such person, rather than the court's order. See K.S.A. 2017 Supp. 22-4903(a) (defining a KORA violation as failure by person defined as 'offender' to comply with the Act); K.S.A. 2017 Supp. 22-4906 (providing 'duration of registration' for 'offender' based on convicted crime); *Jackson*, 291 Kan. at 37 (analogizing 'statutorily required imposition of . . . registration' to standard probation conditions, characterizing registration as 'mandatory' rather than 'discretionary,' and holding registration requirement could be imposed in a journal entry without being pronounced from the bench as part of sentence). In other words, under the plain language of K.S.A. 2017 Supp. 22-4902, neither the fact of notice or its timing are dispositive to whether a person is an 'offender' and, therefore, subject to registration requirements." *Marinelli*, 307 Kan. at 790-91 (finding the district court's failure to notify defendant of his duty to register at the time of his conviction did not excuse defendant's duty to register under KORA).

"Since the duty to register under KORA springs into existence by operation of law immediately upon the existence of statutorily prescribed conditions, it is not within or part of a criminal sentence." *State v. Thomas*, 307 Kan. 733, 750, 415 P.3d 430 (2018). That same rationale compels the conclusion that KORA registration is not part of a juvenile offender's sentence.

Any lack of the magistrate judge's authority is immaterial because the duty to register arises by statute, falls on N.R., and is not part of N.R.'s sentence. N.R.'s adjudication of rape, a severity level 1 offense if committed by an adult, triggered his duty to register. Because N.R.'s registration requirement was not a part of his sentence but arose out of his adjudication, the magistrate did not err by telling N.R. about his statutory duty to register. Under K.S.A. 2018 Supp. 20-302b(a)(6), the magistrate judge had jurisdiction to hear N.R.'s case. After adjudicating N.R. as a juvenile offender, the magistrate judge sentenced N.R. to probation with an underlying term of incarceration, according to the provisions of the juvenile code. N.R.'s sentence is unaffected by his duty

17

to register as K.S.A. 2018 Supp. 22-4906(h) requires. By telling N.R. about his duty to register, the magistrate judge neither caused the court to lose jurisdiction nor imposed an illegal sentence.

Affirmed.